JOHNSON and another vs. PARKER and another.

CONTRACT. *Rescission on ground of mistake. Compromise of claims with creditors.*

1. Where it appears clearly that one entered into a contract under a *bona fide* mistake, ignorance or forgetfulness of facts material thereto, he may avoid or rescind the contract on that ground, provided the rights of innocent third parties will not be prejudiced by such avoidance.

2. In such a case it is not material to inquire whether such person might not, by reasonable diligence, have ascertained the facts which he had forgotten, or in regard to which he was so mistaken or in ignorance.

3. But where several creditors have agreed with their debtor to compromise their claims against him at a stipulated rate, each agreeing to such compromise upon consideration of the like agreement of the others, no one of them can avoid or rescind such agreement on his part upon the ground that it was made through mistake, forgetfulness or ignorance as to the amount or situation of his claim, or the manner in which it was secured.

4. There is a *conclusive presumption* of law in such cases that the setting aside of such a settlement, in favor of one creditor, upon any of the grounds named, would be injurious to the other creditors; and the debtor may avail himself of the objection in a suit against him alone upon such a compromised claim, because that is a necessary means of protecting such other creditors.

5. In such an action, therefore, it was not error to refuse to give to the jury as instructions the two propositions first above stated.

6. It is not necessary, to entitle creditors to the protection of this rule, that they should have *convened*, or that a formal promise should have been made by each to all the others to abide by the settlement. It is sufficient that they have communicated with each other *through the debtor*, by accepting his proposition in writing made in the same form to each, from which it appears that the consideration for the promise of each was the like promise made by the others.

APPEAL from the Circuit Court for *Dane* County.

Action upon promissory note. In May, 1872, the plaintiffs, residing in New York, placed in the hands of their attorneys there for collection, a claim against the defendant *Parker*, which was by them immediately forwarded to their correspondents at Madison, Wisconsin, where *Parker* resided. On January 25, 1873, *Parker*, together with the defendant *Cheney* as surety, executed and delivered to one of plaintiffs' attorneys at Madison, the note in suit, payable in May following, for the amount then due on the account, including interest. This note was retained by such attorneys, and no notice of it was given by them, until some time afterward, to either the plaintiffs or their attorneys in New York. In April, 1873, the defendant *Parker*, through his attorneys at Madison, addressed a circular to all of his creditors, including plaintiffs, containing a statement of his assets and liabilities, with an offer to compromise by a payment of twenty-five cents on the dollar, which arrangement, he declared, must be effected or he would be forced into bankruptcy. This circular contained a statement of plaintiffs' claim at its original amount, which was less than the face of the note, but did not show that it had been in any way secured, and plaintiffs, ignorant of that fact, accepted the terms offered, and, upon receiving twenty-five per cent. of their claim, signed a printed receipt reciting that " in consideration of the mutual agreement to compromise of the creditors " of *Parker*, they acknowledged full payment and satisfaction of their claim. It appeared in evidence, also, that several others of the creditors had accepted the compromise and given like receipts; but otherwise there was no agreement among the creditors respecting the compromise, nor did it appear that the plaintiffs had ever communicated with any of the other creditors about it.

Before accepting the compromise, plaintiffs inquired of their attorneys in New York as to the situation of their claim, and were told by them that they did not think it was secured; but no inquiry was made of their attorneys at Madison.

As soon as the plaintiffs learned that their claim had been secured, they tendered back to *Parker* the amount received upon the compromise, which was refused, and immediately entered judgment upon the note in the circuit court by virtue of a warrant of attorney thereto attached. On motion of defendants, this judgment was vacated, and they were allowed to answer, setting up as a defense the compromise above stated. At the conclusion of the trial, plaintiffs' counsel requested instructions, in substance, as follows : 1. That notice to or knowledge of an agent is notice to or knowledge of his principal only when given to or acquired by such agent in the course of his employment for his principal, and then only in the particular transactions in which he represents such principal, *except* in cases where the rights of innocent third parties are so involved that it may be necessary to their protection to so charge the principal ; and that if the plaintiffs were ignorant of the existence of the note at the time of signing their receipt in full satisfaction of their claim, and their attorneys at Madison had no agency in effecting the compromise, the plaintiffs would not be charged with notice of such note. 2. That where a party enters into a contract under a clear, *bona fide* mistake, ignorance or forgetfulness of facts material thereto, he may on that account avoid or rescind such contract, provided the rights of innocent third parties will not be thereby prejudiced ; and that in such case it is not material to inquire whether such party might not by reasonable diligence have ascertained correctly the facts which he had forgotten or in regard to which he was so mistaken or in ignorance. These instructions were refused, and the jury were directed to find for the defendant.

There was a verdict in accordance with such instruction, and judgment thereon, from which plaintiffs appealed.

*Gurnee & Gregory*, for appellants :

1. Plaintiffs' receipt may be contradicted. Story on Con., § 981 ; *Skaife v. Jackson*, 3 B. & C., 421. The case is analogous to those in which a creditor, having taken from his debtor

the note of a third party in full satisfaction of his claim, afterward returns it and seeks to recover on his original demand on the ground of fraud or mistake. *Wilson v. Foree*, 6 Johns., 110; *Melledge v. Boston Iron Co.*, 5 Cush., 158. 2. At the time of entering into the compromise the plaintiffs were laboring under a mistake of *fact*, to which the circular of the defendant *Parker* largely contributed, and there was no meeting of the minds of the contracting parties, such as is essential to a valid contract. *Bellas v. Hays*, 5 S. & R., 427; 3 L. C. in Eq., 406–21; 3. The knowledge of an agent will charge his principal with notice only in transactions in which he is represented by such agent (*LeNeve v. LeNeve*, 2 L. C. in Eq., 164; *Bank of U. S. v. Davis*, 2 Hill, 451–63; *Ross v. Houston*, 25 Miss., 591; *Fulton Bank v. New York & Sharon Canal Co.*, 4 Paige, 127); except where the rights of innocent third parties are involved (*Bierce v. Red Bluff Hotel Co.*, 31 Cal., 160); but in case of a *bona fide* mistake, like the one at bar, it is not necessary nor possible to charge the principal with such notice. *Utica Bank v. Van Giesen*, 18 Johns., 485; *Union National Bank v. Sixth National Bank*, 1 Lans., 13, affirmed, 43 N. Y., 452; *Allen v. Mayor, etc.*, 4 E. D. Smith, 404. 4. To relieve a party from a contract entered into through ignorance or mistake of fact, it is not necessary that the ignorance or mistake be such as could not have been avoided by the exercise of reasonable diligence. *Cocking v. Pratt*, 1 Ves. Sr., 400; *Gee v. Spencer*, 1 Vern. 32, and *Saxford's Case* there cited; 1 Story on Con., § 410; *Lucas v. Worswick*, 1 Moody & Rob., 293; *Waite v. Leggett*, 8 Cow., 195; *Merchant's Nat'l Bank v. Nat'l Eagle Bank*, 101 Mass., 281; *Appleton Bank v. McGilvray*, 4 Gray, 518; *Kelley v. Solari*, 9 M. & W., 54; *Townshend v. Crowdey*, 8 Com. Bench, N. S., 477; *Champlin v. Laytin*, 18 Wend., 407; *Bell v. Gardiner*, 4 Man. & Gr., 11; *Hurd v. Hall*, 12 Wis., 112; 1 Story's Eq. Jur., § 146, notes; 43 N. Y., 452; 46 id., 685; *Martin v. Morgan*, 1 Brod. & Bing., 289. Cases of *Brisbane v. Dacres*, 5 Taunt., 144; *Bilbie v. Lumley*, 2 East, 469; and *Lowry v. Bourdieu*, 2

Doug., 468, distinguished.   5.  There was no agreement what-
ever between plaintiffs and any other creditors of *Parker* as to
the compromise, nor does it appear that any of such creditors
were advised of or influenced by plaintiffs' action in the prem-
ises.   The rights of third parties are not, therefore, in any way
involved, and plaintiffs are not bound by the compromise.
*Williams v. Carrington*, 1 Hilt., 515; *Greenwood v. Lidbetter*, 12
Price, 183; *Lathrop v. Knapp*, 27 Wis., 214; *Steinman v. Mag-
nus*, 11 East, 390; *Cullingworth v. Loyd*, 2 Beav., 385.

*Lewis & Tenney*, for respondents:

1.  As a general rule, a party may contradict his written re-
ceipt; but where such receipt contains a recital of facts, or an
agreement, as in this case, the party signing it is estopped from
denying such recital or agreement.   27 Me., 345; 42 Ill., 179;
25 N. Y., 302; 37 Ill., 95; 12 Pick., 557; Bigelow on Estop-
pels, 303; 15 Pick., 40; 3 Hill, 216; 4 Met., 381.   An agree-
ment by a creditor with his debtor to take a less sum in full
satisfaction of his debt, though in general void, is valid pro-
vided there be any benefit, or the possibility of a benefit, ac-
cruing to the creditor therefrom.  *Steinman v. Magnus*, 2 Campb.,
124; 1 East, 390; *Bradley v. Gregory*, 2 Campb., 383; *Wood
v. Roberts*, 2 Starkie, 417; *Boothby v. Sowden*, 3 Campb., 175;
*Sibree v. Tripp*, 15 M. & W., 23.   The defendant's note was not
due at the time of the compromise.   The payment then made
was a sufficient consideration to support the agreement.   *Cum-
ber v. Wane*, 1 Smith's L. C., 595; *Smith v. Brown*, 3 Hawks
(N. C.), 580; *Brooks v. White*, 3 Met., 283; *Austin v. Darwin*,
21 Vt., 39; *Spann v. Baltzell*, 1 Fla., 302; *Milliken v. Brown*,
1 Rawle, 391; *Kellogg v. Richards*, 14 Wend., 116; 29 Miss.,
141.   2. The defendant *Parker*, in making his statement to his
creditors, had a right to presume that each creditor knew the
situation of his own claim, and it was not expected that he
would go into details, nor was he guilty of any fraudulent con-
cealment in not so doing.   3. It must be presumed that the
acceptance of the compromise by plaintiffs was an inducement

to other creditors to accept, and this being the case, they cannot now claim to rescind on the ground of mistake. *Bean v. Amsink*, 12 Am. Law Reg., No. 6, 1873, pp. 379, 382–3; *Pinneo v. Higgins*, 12 Abb. Pr., 334; *Collingworth v. Loyd*, 2 Beav., 385. 4. Notice to plaintiffs' attorneys at Madison was notice to them, and they must suffer, and not the defendants, by the negligence of such attorneys. 1 Story on Con., §§ 136, 163; *Sutton v. Dillaye*, 3 Barb., 529; Paley Ag., 263 and note; *Hargreaves v. Rothwell*, 1 Keen, 154. 5. The plaintiffs themselves were guilty of negligence which will prevent their recovery, in not having availed themselves of the means within their power of obtaining information in regard to their claim. *Milnes v. Duncan*, 6 B. & C., 673; *Wason v. Wareing*, 15 Beav., 151; Adams' Eq., 441; *Bilbie v. Lumley*, 2 East, 470; *Norton v. Marden*, 15 Me., 45; *Welsh v. Carter*, 1 Wend., 185; *Martin v. Morgan*, 1 Brod. & Bing., 289; 1 Story's Eq. Jur., § 150. The decisions in *Hurd v. Hall*, 12 Wis., 112; *Kelly v. Solari*, 9 Mees. & Wels., 54; *Bell v. Gardiner*, 4 M. & G., 11 (43 E. C. L., 16); and *Champlin v. Laytin*, 18 Wend., 407, are based upon the ground that the party seeking to rescind had *not* been guilty of any *laches* contributing to the mistake, and therefore do not conflict with, but rather support, this position.

DIXON, C. J. The court quite agrees with the counsel for the plaintiffs upon the propositions chiefly argued at the bar, and which arose upon the exception to the refusal of the circuit court to instruct the jury, at the request of the plaintiffs, as follows: "Where a party enters into a contract under a clear *bona fide* mistake, ignorance or forgetfulness of facts material thereto, he may, on that account, avoid or rescind such contract, provided the rights of innocent third parties will not be prejudiced by such avoidance. And, in such case, it is not material to inquire whether such party might not, by reasonable diligence, have ascertained correctly the facts which he had forgotten, or

in regard to which he was so mistaken or in ignorance as afore-said."

The requests so presented are looked upon by this court as correct statements of the law, and we cannot but congratulate the young gentleman representing the plaintiffs, and who appeared here for the first time, on the industry, ability and clearness displayed in the argument. Such discussions are of the greatest utility, and are always thankfully listened to and received by the judges, whose energies are too frequently over-tasked by labors of the kind thrust upon them without the aid of similar arguments.

But, notwithstanding the accuracy of the requests, we are still of opinion that the refusal was justifiable on the ground that the rights of innocent third parties were or might be prejudiced by the avoidance. We think the avoidance in this case was one in which all the creditors of *Parker*, joining in the compromise, were or might be interested, and by which their rights were or might be prejudiced, and not one confined in its operation or limited in its effects to the rights of the parties before the court and connected with the action, being the plaintiffs on the one side and the defendant *Parker* and his surety on the other. If this were not so, and if none but these parties were interested, and no rights but theirs to be affected, the requests should have been granted. Certainly the defendant *Parker*, *himself knowing all the facts and not having been in any manner misled respecting them*, has no right or equity to refuse to pay his debt because the plaintiffs made a mistake about it or were ignorant of its true character and situation, or because they were negligent or careless in not ascertaining the condition of it in the hands of their attorneys, or their attorneys inattentive or heedless in not informing them, except as he can identify himself with and take refuge behind the rights and equities of his other creditors entering into the composition and who released their debts. That negligence is not actionable, nor will it defeat the right of the

negligent party, which was *not injurious* to another or to the party complaining of it. This is a general principle running through all the law of negligence, and not inapplicable to cases of this nature any more than to others.

But we think agreements of this nature, by which a debtor contracts with two or more of his creditors for the payment of his debts at a specified sum or rate less than their full amounts, and the creditors contract with the debtor and mutually with each other to receive such sum or rate in full satisfaction of their respective demands and to discharge the debtor from all further obligation or liability, stand upon peculiar grounds; and that there is an underlying principle of public policy pertaining to them, which excludes all evidence of mistakes of the kind here shown, on the part of single creditors entering into them, when offered for the purpose of breaking through the settlement or going behind and setting it aside. The rule which enables the debtor to take advantage of the rights and equities of his other compromising creditors, when attacked by one of them, is well settled and familiar. In no other way can the rights of the other creditors be protected and their interests made secure under such circumstances, except through the debtor and by means of his resistance to the demands of the subsequently dissatisfied or repudiating creditor. See *Lathrop v. Knapp*, 27 Wis., 225, 227, and authorities there cited.

The respect paid by the law to compromises of doubtful or disputed claims fairly made, and the favor with which it regards and will enforce them, are well understood. *Kercheval v. Doty*, 31 Wis., 476. The same respect and the same favor extend likewise to a compromise fairly made between a debtor and several of his creditors. Arrangements of this nature are of frequent occurrence and of the greatest practical importance, especially in commercial circles. The peace and tranquillity of the whole commercial world, or of great numbers in it, as well as that trust and confidence which are the life of trade and commerce, are to a great extent dependent upon the validity and

finality of such settlements. It would not be easy to estimate, but the numbers are not small, in all our large towns and cities, of persons engaged in commercial pursuits who stand upon such settlements as the foundation of their credit and solvency; and, such foundation being taken away, pecuniary ruin must not only come to themselves, but loss and disaster must likewise fall upon many others, who, acting on the faith of the settlements, have entered into commercial dealings with, and given extensive credits to, the debtors making them. And this condition of things, owing to the misfortunes of some, the incapacity of others, and the dishonesty or extravagance of still others, as also to the contractions and expansions of the circulating medium and fluctuations of the money market, which are always occurring at periods more or less frequent, always has existed, and probably always will exist, in all commercial communities. The indifference of the law to such settlements, or the easy and successful disregard of them by the assenting creditors, or any of them, must therefore always be attended with wide-spread disturbance and mischief, and be the constant source of distrust and alarm. Hence it is that the law is not indifferent to them, but guards and upholds them with a solicitude and watchfulness proportionate to the evils which must follow if it were otherwise, or if they were easily to be set aside, or broken up and abandoned for slight and trivial causes. For it is of the constitution of these agreements, that they cannot be impeached or disregarded by one creditor without at the same time opening the door to all others, and annulling the settlement to all intents and for all purposes. Such are the constituent elements and essential qualities of them, that they must bind and conclude all the creditors joining in their execution, or they will bind and conclude none. If one creditor is permitted to go behind and disregard the agreement, every other must have the same privilege; and thus the whole settlement falls to the ground and loses all force by the successful attack or impeachment of one.

Any consideration of the subject, therefore, which fails to take in and give due weight to these most important and expansive results which may or must ensue, fails in that comprehensiveness necessary to the proper determination of a question like that here presented. A debtor, honest and trustworthy, and so known and confided in by his creditors, is overtaken by misfortune and finds himself suddenly unable to pay his debts. He communicates the facts to his creditors, making a fair and truthful statement of his affairs and disclosure of his assets and means of payment to them, and proposing to pay each a sum proportionate to his ability in satisfaction of the whole debt; and the creditors, being severally content and believing it for their interest as well as his, accept the proposition, and mutually agree to release him, and jointly or severally execute an instrument or separate instruments to that effect. The debtor, his credit restored, immediately resumes business and proceeds as before, obtaining further credit, as is very frequently the case, from the very persons, his former creditors, who have just joined in relieving him from insolvency by the release of the debts previously due to themselves. One of these creditors afterwards ascertains that he made a mistake at the time of compromise, in the amount of the debt due to him, or in respect to its situation, or the security which he held for its payment. Can he be permitted to impeach the agreement, and unsettle and destroy all that has been done, on that ground? If the plaintiffs in this case can be permitted to disregard the agreement on account of the mistake made by them, then the creditor in the case supposed could do the same thing. This court is of opinion that agreements of the kind cannot be impeached on such grounds. We think that the principles of public policy forbid it; for it is manifest that all confidence in such arrangements, and all the benefits to be derived from them, would be destroyed if it were otherwise. No creditor could enter into them or into subsequent business transactions with the debtor, with any assurance of

safety, if such grounds of impeachment were held to exist. The relations of confidence between the different compounding creditors are such, and their rights and interests have become so interwoven and bound together by the act of compromise, that each one should be and is estopped from denying the validity of the agreement for causes like this. For the peace and safety of all concerned, each one must be held concluded by his own mistakes so committed. It is a species of negligence on his part, more or less gross according to circumstances, and savoring somewhat of bad faith or a vicious indifference to the rights of others, for one creditor, not knowing the facts with regard to his own claim nor taking the trouble to ascertain them, to draw the other creditors into the composition in the belief that his claim is fully and truly represented and released; and such negligence ought to preclude him from afterwards showing his claim to have been different, or throwing doubt and suspicion upon the settlement on such ground. It is indispensable to such settlements, and that any good may come from them, that this rule should be held and adhered to with regard to the representations, express or implied, of the individual creditors, respecting the amounts of their several claims and the fact that such claims were extinguished by the compromise. One creditor has no right to cast the burden of his own mistakes upon the others, or to insist that they shall suffer loss, or their pecuniary rights or interests be put in jeopardy, in consequence of such mistakes.

And so strong and well sustained, in our judgment, is this principle of public policy, that we do not think the mistaken creditor should be permitted to come in at all with evidence to show his own mere mistake. We do not think the way should be open at all for him to enter and speculate as to whether other creditors may sustain loss or be injured by reason of his being allowed to correct or to take advantage of his own mistakes. The presumption, conclusive in its nature under the circumstances, is, that the other creditors will be so injured.

To open the door for particular inquiry into the facts regarding the situation and rights of the other creditors, and to make the right of the mistaking creditor dependent on those facts, would lead to most tedious, complicated and expensive investigations and controversies; and sound public policy is clearly against it.

And our confidence in the correctness of these conclusions has been somewhat strengthened by the circumstance, that, after a quite thorough examination of the authorities, we have found no case where a composition between a debtor and his creditors has been set aside, or its validity questioned, on the ground of such mistake. Avoidances on the ground of fraud, either by secret preferences given or promises made by the debtor to one or more of the creditors, or by false representations of the debtor or his concealment respecting the amount or value of his property, have been frequent enough; but none have been met with where a mistake of the kind here complained of was the ground. It is believed that no such adjudication is to be found, and that no such ground for avoiding the agreement by one of the creditors exists.

We return, therefore, to the proposition with which we started, which was, that this was a case within the exception to the rule recognized by counsel, namely, one where the rights of innocent third parties were involved and would be prejudiced by an avoidance of the contract on account of the mistake.

It is to be observed of the agreement in question, that it was not one the validity or obligation of which was made to depend upon its being executed by *all* the creditors of *Parker*. It required, therefore, only the acceptance and execution by two or more creditors, to make the agreement obligatory upon all the creditors who joined in it. It appeared on the trial that, besides the plaintiffs, other creditors united in the execution of the agreement, receiving the sum offered in compromise and releasing the debtor.

It is also objected that the agreement was invalid because it does not appear that there was any convention or actual meeting of the creditors, or formal promise by each to all the others to abide by the settlement. Such convention or formal promise was clearly unnecessary. The creditors communicated with one another through the debtor, by accepting his proposition in writing made in the same form and words to each, and in that way mutually promised and agreed each with all the others. There could have been no misunderstanding about this, since the release executed by the plaintiffs recited that it was " for and in consideration of the mutual agreement to compromise of the creditors of *Amos Parker* at twenty-five per cent.," etc. *Cullingworth v. Loyd*, 2 Beavan, 385, is an authority that such convention of the creditors, or formal and direct promise, is not requisite to the validity of the agreement.

On the whole case, therefore, we are of opinion that the judgment of the court below was right and should be affirmed.

*By the Court.*—Judgment affirmed.