Pfeiffer v. Marshall, 136 Wis. 51.

PFEIFFER and another, Respondents, vs. MARSHALL and another, Appellants.

*May 11—June 5, 1908*

*Contracts: Fraud: Waiver: Election to affirm: Action for reformation.*

1. For two years after discovering the falsity of representations (as to value) by which they had been induced to make a contract for the purchase of land, the purchasers prosecuted an action for reformation of the contract upon grounds not connected with such fraud. *Held*, that they thereby ratified and elected to stand upon the contract actually made and, although judgment went against them in the reformation action, they cannot set up the fraud in avoidance of the contract.

2. So far as waiver of the fraud was concerned, it was wholly immaterial whether the contract was reformed or not, since the same fraud induced the making of the contract whether it was in fact as expressed in the writing or was as claimed by the purchasers.

3. Taking any step to enforce a contract is a conclusive election not to rescind it on account of anything then known to the party so moving, and he will not be heard to say that he did not intend to waive.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

The action was brought to recover interest on a note given for the purchase of an interest in real estate under a land contract.    The complaint alleges in effect that on the 7th and 8th of May, 1903, the plaintiffs by land contracts sold to the defendants an undivided one-third interest in 28.21 acres of land, for which the defendants agreed to pay $15,000 within five years and $100 annually towards the taxes on such real estate during said five years; that defendants paid two instalments of interest, to wit, $375 November 7, 1903, and $375 May 7, 1904, and also $100 towards the taxes of 1903; that there is due and unpaid on the note and land contracts four instalments of interest of $375 each and $200 taxes.

The answer admits the ownership of the real estate, the signing of the note and contracts, the payment of $750 interest and $100 taxes, and that no other payments were made by the defendants.    It further alleges that the defendants were induced to sign the note and contracts by reason of false and fraudulent representations made to them by the plaintiff *Pfeiffer*, acting for himself and his coplaintiff; that the fraudulent representations so made were substantially as follows: That the value of the real estate was more than $50,000, when in truth and in fact its real value was not to exceed $25,000, as was then known by the plaintiff *Pfeiffer*; that the Gentlemen's Driving Club, an association of Milwaukee, had offered $52,000 for such real estate and had agreed to take the same as soon as they could raise the money; that negotiations were then pending between *Pfeiffer* and said Gentlemen's Driving Club, when in truth such association had never made any offer for such real estate; that one Capt. Merryman had paid for real estate nearly adjoining said 28.21 acres on the east the sum of $3,000 for one acre, when in truth he had paid but $2,500 for about three acres, which was then well known to *Pfeiffer*; that the real estate adjoining on the west was worth $2,000 an acre and the owners were holding it for $2,000 to $2,500 an acre, when in truth such real estate was not held by its owners for more than

$1,000 an acre, as was then well known to said *Pfeiffer;* that
the soil of such real estate was rich and fertile and easy to
cultivate and like a garden, when in truth the soil was lean
and sterile, full of noxious weeds, and hard to cultivate, as
was then well known by said *Pfeiffer.*

It is further alleged that the defendants, relying upon
such false and fraudulent representations, were induced to
sign the note and contracts, and through the further fraud of
said *Pfeiffer* substantially as follows: That he falsely and
fraudulently represented to the defendants that there was a
mortgage of $15,000 on the real estate in question drawing
five per cent. interest, which *Pfeiffer* had to pay, together
with $100 taxes per annum, and that he had no income ex-
cept $1,000 a year salary; that he proposed if the defendants
would assist him in selling the real estate by paying the in-
terest on the mortgage from year to year and $100 taxes he
would give them the use of such real estate during the time
they should pay interest and taxes, and when such real estate
was sold he would give them all over $45,000 up to $50,000
of the proceeds and one third of all over $50,000, and that
such real estate would be sold for more than $50,000; that
defendants accepted such proposition and agreed to pay in-
terest and taxes to the amount of $850 per annum; that
thereupon *Pfeiffer* fraudulently caused to be prepared a land
contract and presented the same to defendants for signature
May 7, 1903; that defendants refused to sign, and on the
next day a modification was procured, and through the false
and fraudulent representations the note and contracts were
signed under the belief that such modified agreement con-
tained the real agreement between the parties.   The note for
the purchase price was given on the 8th, and the land con-
tract modified by providing, among other things, that the
parties of the second part, defendants herein, should have the
exclusive use of the entire tract of 28.21 acres for a term of
five years, using the same as tenants of plaintiffs during said
term, or for such period thereof as defendants should con-

tinue to pay the interest and taxes, said taxes not to exceed $100 per annum, and that on request in writing the plaintiffs should grant an extension of the contracts for five years. And it was further agreed in said modification of the land contract that if at the end of said five years the second parties, defendants herein, should request to be released from the agreement and further liability and at a time when they were not in default for payment of interest or taxes, the first parties should release them from any further liability on said contract.

It is alleged that about November 1, 1903, the defendants notified *Pfeiffer* that they would terminate their agreement May 7, 1904, and *Pfeiffer* then informed them that the agreement could not be terminated for five years; that on March 18, 1904, the defendants demanded in writing that the contract be reformed to correspond with the actual agreement so as to provide among other things that the land contract and agreement between the parties be subject to termination at the election of the second parties, defendants herein, at the end of any year.    In April, 1904, the defendants commenced an action to reform the land contracts executed May 7 and 8, 1903.    This reformation action was prosecuted and finally resulted in judgment for defendants, plaintiffs herein, which judgment was entered September 20, 1906.    It is further alleged that the minds of the parties never met on the agreement as written and defendants never assented thereto.

The facts were set up in the answer at great length by way of defense and also by way of counterclaim.    Plaintiffs denied the allegations of the counterclaim.    On the trial the defendants withdrew the counterclaim and amended the prayer of the answer so as to ask that the complaint be dismissed on the merits with costs.    The case was tried upon the issues joined and the following verdict returned:

"(1) Did the plaintiff *John C. Pfeiffer* represent to the defendants or either of them, as an inducement to the making of the contract in question by the defendants, that the land

described in the complaint in this action was rich, fertile, and very productive, and free from noxious weeds? *A.* Yes.

"(2) If you answer the first question 'Yes,' was such representation untrue? *A.* Yes.

"(3) If you answer the second question 'Yes,' did the plaintiff *Pfeiffer* know, or ought he to have known, that such representation was false? *A.* Yes.

"(4) If you answer the third question 'No,' did the plaintiff *Pfeiffer* make such representation recklessly, without any knowledge on the subject? *A.* ——.

"(5) If you answer either the third or fourth question 'Yes,' did the defendants rely upon such representation as true and were they induced thereby to enter into said contract? *A.* Yes.

"(6) If you answer the fifth question 'Yes,' did the defendants, in relying upon such representation as true and entering into said contract, exercise due and proper vigilance? *A.* No.

"(7) If you answer the second question 'Yes,' when did the defendants first obtain knowledge of the falsity of such representation? *A.* (by court). During the summer of 1903.

"(8) Did the plaintiff *Pfeiffer* represent to the defendants or either of them, as an inducement to the making of the contract by the defendants, that the premises in question were worth more than $50,000? *A.* Yes.

"(9) If you answer the eighth question 'Yes,' was such representation untrue? *A.* Yes.

"(10) If you answer the ninth question 'Yes,' did the plaintiff *Pfeiffer* know, or ought he to have known, that such representation was false? *A.* Yes.

"(11) If you answer the tenth question 'No,' did the plaintiff *Pfeiffer* make such representation recklessly, without any knowledge on the subject? *A.* ——.

"(12) If you answer either the tenth or eleventh question 'Yes,' did the defendants rely upon such representation as true, and were they induced thereby to enter into said contract? *A.* Yes.

"(13) If you answer the twelfth question 'Yes,' did the defendants, in relying upon such representation as true and entering into said contract, exercise due and proper vigilance? *A.* No.

"(14) If you answer the ninth question 'Yes,' when did

the defendants first obtain knowledge of the falsity of said representation? *A.* In July, 1904.

"(14*a*) If you answer the ninth and thirteenth questions 'Yes,' ought the defendants, in the exercise of due and proper vigilance, to have discovered that said representation was false before they paid the interest due May 7, 1904? *A.* Yes.

"(15) Did the plaintiff *Pfeiffer* represent to the defendants or either of them, as an inducement to the making of the contract by the defendants, that the Gentlemen's Driving Club had offered him the sum of $52,000 for said land? *A.* Yes.

"(16) If you answer the fifteenth question 'Yes,' was such representation untrue? *A.* Yes.

"(17) If you answer the sixteenth question 'Yes,' did the defendants rely upon such representation as true, and were they induced thereby to enter into said contract? *A.* Yes.

"(18) If you answer the seventeenth question 'Yes,' did the defendants, in relying upon such representation as true and entering into said contract, exercise due and proper vigilance? *A.* No.

"(18*a*) If you answer the seventeenth and eighteenth questions 'Yes,' ought the defendants, in the exercise of due and proper vigilance, to have known the falsity of said representation before they paid the interest due May 7, 1904? *A.* Yes.

"(19) If you answer the sixteenth question 'Yes,' when did the defendants first obtain knowledge of the falsity of such representation? *A.* Between November, 1906, and April, 1907.

"(20) Did the plaintiff *Pfeiffer* represent to the defendants or either of them, as an inducement to the making of the contract by the defendants, that $3,000 had been paid for one acre near the plaintiff's land to the east (meaning Capt. Merryman's land)? *A.* Yes.

"(21) If you answer the twentieth question 'Yes,' was such representation untrue? *A.* Yes.

"(22) If you answer the twenty-first question 'Yes,' did the plaintiff *Pfeiffer,* when he made such representation, know or ought he to have known that it was false? *A.* Yes.

"(23) If you answer the twenty-second question 'No,' did

the plaintiff *Pfeiffer* make such representation recklessly, without any knowledge on the subject?   *A.* Yes.

"(24) If you answer either the twenty-second or twenty-third question 'Yes,' did the defendants rely upon such representation as true, and were they induced thereby to enter into said contract?   *A.* Yes.

"(25) If you answer the twenty-fourth question 'Yes,' did the defendants, in relying upon such representation as true and entering into said contract, exercise due and proper vigilance?   *A.* Yes.

"(25*a*) If you answer the twenty-first and twenty-fifth questions 'Yes,' ought the defendants, in the exercise of due and proper vigilance, to have known that said representation was false when they paid the interest due May 7, 1904?   *A.* Yes.

"(26) If you answer the twenty-first question 'Yes,' when did the defendants first obtain knowledge of the fact that such representation was not true?   *A.* Within last three or four months.

"(27) Did the plaintiff *Pfeiffer* represent to the defendants or either of them, as an inducement to the making of the contract by the defendants, that the land adjoining plaintiff's land on the west (Shenner's land) had been sold for $1,500 and was held by the owner at $2,000 to $2,500 an acre?   *A.* Yes.

"(28) If you answer the twenty-seventh question 'Yes,' was such representation untrue?   *A.* Yes.

"(29) If you answer the twenty-eighth question 'Yes,' did the plaintiff *Pfeiffer*, when he made such representation, know or ought he to have known that it was false?   *A.* Yes.

"(30) If you answer the twenty-ninth question 'No,' did the plaintiff *Pfeiffer* make such representation recklessly, without any knowledge as to its truth or falsity?   *A.* ——.

"(31) If you answer the thirtieth question 'Yes,' did the defendants rely upon such representation as true, and were they induced thereby to enter into such contract?   *A.* Yes.

"(32) If you answer the thirty-first question 'Yes,' did the defendants, in relying upon such representation and entering into said contract, exercise due and proper vigilance?   *A.* Yes.

"(32*a*) If you answer the twenty-eighth and thirty-sec-

ond questions 'Yes,' ought the defendants, in the exercise of due and proper vigilance, to have known that said representation was false at the time they paid the interest due May 7, 1904?    A. Yes.

"(33) If you answer the twenty-eighth question 'Yes,' when did the defendants first obtain knowledge of the fact that such representation was not true?    A. Within three or four months.

"(34) If the court should find that defendants were induced to said contract by fraud, did the defendants suffer damage thereby?    A. (by court). Yes."

Demand for reformation, prosecution of reformation suit to final judgment, and knowledge of value of premises are established by the verdict and evidence.    On motion of the defendants the court changed the answer to the eighteenth question from "No" to "Yes," and struck out the answer to the twenty-third question.    Judgment was rendered upon the verdict in favor of the plaintiffs, from which this appeal was taken.

For the appellants there was a brief by *Houghton & Neelen,* and oral argument by *F. W. Houghton.*

For the respondents there was a brief by *Perry & Kroesing* and *George E. Morton,* and oral argument by *Mr. Morton* and *Mr. C. B. Perry.*

KERWIN, J.    Upon the established facts we see no escape from affirmance of the judgment, and therefore consideration of many of the alleged errors discussed by the appellants is rendered unnecessary.    Aside from the findings of the jury set out in the statement of facts to the effect that the defendants knew, or by the exercise of due vigilance ought to have known, that the representations were false, it is established without substantial dispute that in July, 1904, the defendants had knowledge that the representations respecting the value of the land in question were false and that such value was not $50,000, but only about $22,000.    Notwithstanding,

the defendants continued to prosecute the action for reforma-
tion of the contract for nearly two years after obtaining such
knowledge and until judgment was rendered against them in
the action.   Now the question arises whether such action in
the prosecution of the reformation suit did not amount to a
waiver of the fraud or an election to stand upon the contract
made.   The false representations relied upon to reverse the
judgment are: (1) The soil was rich and fertile, etc.;
(2) the value of the land was more than $50,000; (3) the
Gentlemen's Driving Club had offered him $52,000 for such
land; (4) $3,000 had been paid for one acre near the plaint-
iffs' land to the east, meaning the Merryman land; (5) the
land adjoining plaintiffs' land on the west had been sold for
$1,500 and was held by the owner at $2,000 to $2,500 an
acre.

The jury found that these representations were made, and
that plaintiffs knew, or ought to have known, they were false,
and that they induced the making of the contract, but that
defendants did not exercise due vigilance in relying upon the
representations as to the character of the soil, value of the
property, and offer of the Gentlemen's Driving Club; that
they did exercise due vigilance in relying upon the represen-
tations as to the price paid for the Merryman tract and the
Shenner tract, and what the Shenner tract was held at; that
the defendants, in the exercise of due vigilance, ought to
have known the falsity of the representations as to value, of-
fer of Gentlemen's Driving Club, price paid for the Merry-
man tract, price paid for the Shenner tract, and what the
Shenner tract was held at when they paid the interest May
7, 1904.   The jury also found upon sufficient evidence that
the defendants obtained knowledge of the falsity of the rep-
resentations as to value of the premises in question in July,
1904.   It will be seen that the value of the property was the
material question, and that the other representations respect-
ing the Merryman and Shenner tracts and offer of the Gen-

tlemen's Driving Club were evidentiary of the main fact, namely, the value of the property covered by the contract.

On March 18, 1904, the defendants served a written notice upon plaintiffs *Pfeiffer* and *Mayer* and their wives, demanding that the written agreement between the parties entered into on the 7th and 8th of May, 1903, be reformed so as to conform to the intention of the parties thereto, and provide that the defendants herein should have the use of the premises described in the agreement during the period of five years from date of the contract unless sold in less time, upon payment of interest on a $15,000 mortgage upon the property at the rate of five per cent. per annum and taxes not exceeding $100 a year, and further, among other things, that the agreement be subject to termination at the end of any year at the election of the second parties, defendants herein, defendants to acquire or have no title to the premises, but to forfeit all moneys paid in the event of termination of the contract by them before the expiration of five years.  On April 1, 1904, an action was commenced to reform the agreement in accordance with the demand in such notice, and the defendants in that action, plaintiffs here, answered, denying any mistake or right of reformation, and averring that the agreement reduced to writing on the 7th and 8th of May, 1903, expressed the true agreement of the parties.  On or about May 6, 1906, the defendants here offered by letter to surrender possession of the premises on the alleged ground that they had a right under the contract to terminate it at the end of any year by forfeiting amounts paid, and sent a check for $375, being the amount then due, together with the key to the premises.  Plaintiffs through their attorneys acknowledged receipt of the check and key and stated that they held the key subject to the order of the defendants, and further that the plaintiffs *Pfeiffer* and *Mayer* would hold the defendants *Marshall* and *Wilbur* to the terms of their contract of May 7 and 8, 1903.

The reformation action was afterwards tried, and on September 20, 1906, judgment in favor of defendants, plaintiffs here, dismissing the complaint, entered. Afterwards a motion to reopen the reformation action and permit the service of an amended complaint was denied. Upon denial of this motion defendants here commenced an action to rescind the contract on substantially the same grounds as set up in the answer in the instant action. The action to rescind was brought on for trial some time before the present action, and after defendants rested the plaintiffs in the rescission action, defendants here, by leave of court discontinued, and an order of discontinuance without prejudice was entered on May 16, 1907. The present action was commenced in October, 1906, and came on for trial May 21, 1907.

It will be seen from the established facts that for a period of two years after discovery that the representations as to the value of the land in question were false defendants prosecuted the reformation action to judgment. This we think amounted to an affirmance and ratification of the contract and to an election to stand upon it, and after being defeated in the reformation action defendants cannot be heard to set up the fraud in order to avoid the contract. We have not deemed it necessary to consider the numerous findings of the jury in favor of the respondents further than they bear upon the questions of election and waiver. It is established without substantial dispute that defendants took and held possession of the property for at least a year under the contract, paid taxes and interest, the last interest being paid about a year after execution of the contract, and further prosecuted an action for the purpose of making certain changes in the written agreement so as to make it conform with the true agreement between the parties in the particulars heretofore referred to. This action in the prosecution of the reformation suit, we think, upon well-settled principles amounted to an election to stand upon the contract and a waiver of the

fraud, without considering other grounds urged for affirm-
ance of the judgment below.  *Bostwick v. Mut. L. Ins. Co,*
116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Kingman &
Co. v. Stoddard,* 85 Fed. 740; *Conrow v. Little,* 115 N. Y.
387, 22 N. E. 346.

It is argued that the defendants did not affirm the contract
or waive the fraud because they insisted that a different con-
tract was made than the one evidenced by the writings.  But
they affirmed the contract actually made and asked that the
writings be made to conform to the contract.  The fraud in-
duced the making of the contract, whether that was the one
evidenced by the writings or the one claimed by the defend-
ants, so that in asking reformation defendants affirmed the
contract actually made and waived the fraud.  Some point
is made by the appellants respecting the intention of waiver,
and cases are cited which it is claimed hold that waiver de-
pends upon the intention to waive, and that where there is
no intention to waive there can be no waiver.  But an ex-
amination of the authorities will show that where, as here,
the facts are known to the party, and he acts in affirmance
of the contract with knowledge of such facts, or takes steps
inconsistent with the nonexistence of the contract, he cannot
be heard to say that he did not intend to waive.  Taking
any step to enforce a contract is a conclusive election not to
rescind it on account of anything known at the time.  *Con-
row v. Little, supra.*  In *Rasmusen v. New York L. Ins.
Co.* 91 Wis. 81, 89, 64 N. W. 303, this court said:

"Doubtless, the act out of which the waiver is deduced
must be an intentional act, done with knowledge of the ma-
terial facts, but it cannot be necessary that there should be an
intent to waive.  Such a rule would allow a secret intention
to defeat the legal effect of unequivocal and deliberate acts."

Intent to waive may be shown by conduct.  *Fraser v.
Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476.  It was
wholly immaterial, so far as waiver was concerned, whether

the contract was reformed as claimed by defendants or per-mitted to stand as set out in the written agreement, because the same fraud induced the making of the contract whether it contained the terms claimed by defendants and not inserted in it or whether it was in fact made as written.

We see no escape from the conclusion that the action to reform, prosecuted as it was for a period of two years after discovery of the fraud, was an unequivocal affirmance of the contract and a waiver of the fraud. *Dawes v. Harness,* 44 L. J. (C. P.) 194; *Rasmusen v. New York L. Ins. Co.* 91 Wis. 81, 64 N. W. 301; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. It follows from what has been said that the judgment of the court below was right and should be affirmed. .

*By the Court.*—Judgment of the court below is affirmed.