GRANT MARBLE COMPANY, Respondent, vs. ABBOT, Appellant.

*December 7, 1909—April 5, 1910.*

*Contracts: Reformation: Mistake: Fraud: Burden of proof: Rescission: Negligence: Building contract: Promise by owner to pay loss sustained: Appeal: Reversal: Further proceedings: Equity.*

1. Where the minds of the parties met upon the terms of a contract executed by them, or where, in the absence of fraud, a mistake was that of one party only, the contract will not be reformed.
2. One asking reformation of a contract must show that the minds of the parties met upon the contract which he seeks to establish.
3. If by the fraud of one party the real contract is not expressed in the writing, and the other party by mistake receives such writing as the real contract, reformation may be had.
4. The fact that the price for which plaintiff, through its president, contracted to do certain marble work in six stories of defendant's building was, by mistake of such president, based upon estimates which had been made by plaintiff's architect for work in five stories only, did not entitle plaintiff to reformation of the contract, where both parties understood and agreed to the terms of the contract as made, and intended no other, and the mistake was not induced by defendant nor known to him at the time.
5. A court of equity will not rescind a contract upon which the minds of the parties met, merely because one of them, without the knowledge of the other, was laboring under a mistake.
6. Where plaintiff seeks to reform or rescind a contract because of his own mistake, of which he claims defendant had knowledge, the burden is upon him to establish such knowledge by clear and satisfactory evidence.
7. One who seeks to rescind must act promptly upon discovery of the facts which he claims entitle him to rescission, and must take no steps in affirmance of the contract. Thus, a contract will not be rescinded for mistake where the party asking such relief completed the contract and afterwards brought an action to reform it.
8. One cannot rescind a contract for mistake due to his own want of ordinary care.
9. Where the owner of a building, upon being informed by a contractor for work therein that, through a mistake in basing his

figures upon estimates for five instead of for six stories, the price for the work had been fixed too low, replied that he did not wish the contractor to suffer a loss on the contract, directed him to complete the work, and said that a fair settlement would be made, the contractor could not recover upon a *quantum meruit*, but could recover the amount of any loss actually sustained by him on the contract, *i. e.* any sum in excess of the contract price necessarily expended in doing the work.

10. In an action to reform a building contract and to recover the reasonable value of work alleged to have been included in the contract by mistake, the supreme court, upon reversing a judgment for plaintiff upon the ground that he was not entitled to such relief, might properly direct that the action be dismissed upon the merits; but, a later promise by defendant to pay any loss sustained by plaintiff on the contract having been shown, the plaintiff, under the liberal rules of practice in equity, is given the right to elect, upon payment of all costs down to the date of such election, to take further evidence as to whether there was a loss on the contract, for the purpose of ending the litigation.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

The complaint in this action alleges the making of a contract between plaintiff and defendant by the terms of which plaintiff agreed to do certain marble work in the six stories of the defendant's building known as the Colby & Abbot building in the city of Milwaukee, Wisconsin, for the sum of $24,150, and that through mistake on the part of one Grant, president of the plaintiff, he included in such contract work and material for only five stories of such building, while the contract covered the six stories. It is further alleged that the agent of defendant either fraudulently concealed the fact or did not know or appreciate that the additional work was included in the contract; that the original specifications for the job included only five stories, while the specifications upon which the contract was made included six stories, and that Grant, president of plaintiff, did not know that the

original specifications, calculations, and bid based thereon had not included any work for the sixth story; that after plaintiff discovered the mistake it, through its agent, took the matter up with defendant's manager, who ordered the work to be done on the sixth story and promised on behalf of defendant to make it right. The plaintiff finished the sixth story in marble the same as the story below, which was reasonably worth $2,882.05, which defendant refused to pay, claiming that the item was covered by the contract between the parties. The prayer is for reformation of the specifications and contract on which they are based so as to confine the marble work to five stories, and, further, that defendant pay for the work and material in the sixth story what the same was reasonably worth, and for general relief.

Defendant moved to make the complaint more definite and certain by separately stating the two causes of action and by electing whether plaintiff stands on its action to reform the contract referred to in the complaint and recover upon the contract as reformed for the work and material alleged not covered thereby, or upon the cause of action attempted to be stated upon alleged promise by defendant to pay in addition to the contract price, and that part of the complaint be stricken out, which motion was denied.

The defendant answered, and the court found substantially: That in October, 1905, defendant, through his architect, called upon plaintiff to make estimates and a bid upon marble wainscoting in the corridors of said building, and at said time there were corridors partitioned off in the first to the fifth stories, inclusive; that the outer walls of the sixth story were in course of construction, but the interior had no existence; that plaintiff sent one Martin, an employee, to said architect for the purpose of receiving instructions and making measurements, and that the architect pointed out to Martin the character of the wainscoting required in each of the five stories and asked him to make measurements of the

same and that the plaintiff submit a bid therefor, at the same
time informing him that the manner of finishing the sixth
story, then in course of construction, and the work required
therein had not been determined; that said architect also
submitted to said Martin certain written specifications for
such wainscoting, calling for the same for the first, second,
third, fourth, and fifth stories only; that said Martin there-
upon made measurements of all of said corridors in which
said work was to be done and submitted same to the plaint-
iff; that plaintiff thereupon, on October 27, 1905, submitted
to said architect, through J. E. Heimerl, its agent charged
with making estimates and bids in its behalf, a bid offering
to do said marble work for $20,050; that thereafter, and
prior to the 11th day of November, 1905, said plaintiff was
informed by said architect that additional marble work was
required for said building of which items were given plaint-
iff; that said plaintiff was also asked to submit a bid for put-
ting marble floors in parts of the first story of said building
and in the corridors of the second, third, fourth, and fifth
stories thereof; that plaintiff prepared a bid thereon in writ-
ing, dated November 11, 1905, and caused the same to be
sent to the office of said architect, but the evidence does not
convince the court that said architect received it; that prior
to the 29th day of October, 1905, said architect had prepared
specifications calling for marble wainscoting, also specifica-
tions for the floors, calling for tile flooring, and had received
bids on behalf of said specifications, said floor specifications
being confined to the first, second, third, fourth, and fifth
stories of said building; that on the 29th day of October,
1905, it was concluded at a conference between defendant,
his secretary at Milwaukee, and said architect to finish all cor-
ridors in said building, including corridors thereafter to be
laid out in the sixth story, with marble floors and marble
wainscoting; that no notice of such change of plan or enlarge-
ment of the work was ever given to plaintiff or any agent of

plaintiff nor to any other contractor; that the specifications theretofore made by said architect remained on exhibit in his office and were not changed or amended, nor was any specification calling for marble floors or marble wainscoting in the sixth story ever prepared by said architect, but long after said date, and on or shortly before the 14th of November, 1905, a copy of the aforesaid specifications was delivered to said Heimerl, representing the *Grant Marble Company;* that said *Grant Marble Company,* through said Heimerl, made its estimate of the cost and value of doing said work according to the information and the specifications so furnished by said architect; that the final instructions of said architect included some other items of work and said Heimerl figured up the total cost and value thereof at $27,821; that on the 14th of November, 1905, said architect called up W. J. Grant, president of plaintiff, who was then in Chicago, by telephone, asking him to come to his office with the view of a contract on the building of said defendant; that said Grant, in pursuance of such message, came to Milwaukee on said day and proceeded directly to the office of said architect; that said Grant had taken no personal part in examining the specifications or the extent of work required thereby or by instructions of said architect, but the same had been wholly attended to by said Heimerl; that said Grant met said Heimerl at the office of said architect and was informed by him that the total of said work amounted to the aforesaid sum of $27,821, and that a reduction from said figures was desired; that said Grant, said Heimerl, and said architect thereupon proceeded to the office of Miss Bright, secretary of said defendant, in the same building, and said Grant then and there informed said architect and Miss Bright in the presence of said Heimerl that the bid of the *Grant Marble Company* for the work in question would be said sum of $27,821; that said architect and said secretary asked for a reduction of the amount, and said Grant thereupon suggested the change of

material which would somewhat cheapen the cost, and also
made concessions of price, reducing said bid to $24,150,
which was acceptable to said secretary and architect, subject
to the approval of the defendant, which was afterwards given;
that in making said final bid said Grant was not informed of
any work required in any way adding to or extending the
work which had theretofore been exhibited to said Heimerl
by said specifications and the instructions of said architect;
that said Grant thereupon offered to put the specifications
for the contract in proper shape; that he drew the same, and,
knowing that said building was being enlarged to six stories
and supposing that the floors and wainscoting in the corridors
of each of such stories was embraced in the work submitted
to and estimated by said Heimerl, he drew the same covering
such work in six stories of said building; that said Grant was
at that time in a state of mental distress by reason of the criti-
cal illness, which shortly afterwards terminated in death, of
his son, by reason whereof he was less careful in examining
the premises than he otherwise would have been; that when
he submitted said specifications to said architect and Miss
Bright no information was given to him of the extent of the
work which had been submitted to said Heimerl as aforesaid;
that in the month of January, 1906, and before any work
had been done on said sixth floor, said Heimerl discovered
that said specifications called for marble floors and marble
wainscoting in the sixth story of said building and he at
once called the attention of said Grant to the mistake, and
said Grant thereupon called upon the secretary of said de-
fendant and showed her the specifications and the schedules
of the *Grant Marble Company* giving the itemized figures of
the bid, and that the same related to five stories only in ac-
cordance with said specifications; that said secretary said
she would write to the defendant about it, and a few days later
read to said Grant a portion of a letter received by her from

defendant dated January 22, 1906, of which the following is a copy:

"Replying to yours of the 20th about Mr. Grant, I appreciate what you say and I do not want him to make a loss on his contract. You can tell him that I will personally take up the matter with him when the work is all finished and see what is really fair. I do not propose to have him make a loss for a mistake, especially under the circumstances; but we cannot adjust the matter now. You are quite right in saying that he can rely on a thoroughly fair settlement, when it is all over and we can see just where he stands. Meantime, let him go ahead, and do everything just as well as he can, and I do not think he will be sorry for it."

That, relying upon the promises contained in said letter, said *Grant Marble Company* completed all the marble work desired for said building, including the laying of marble floors and putting in marble wainscoting in the sixth story thereof; that there was no fraudulent intent on the part of defendant or his agents, but that said mistake on the part of said Grant was induced by the acts and omissions of the defendant's agents hereinbefore stated; that it appears by testimony given on behalf of plaintiff that the total work done and material furnished amounted to and was reasonably worth $28,493.73, including the floors and wainscoting in the sixth story, which at the contract rates amounts to and is reasonably worth the sum of $2,882.05; that the defendant has paid on account thereof $25,612.18, leaving a balance of $2,881.55; that all of said work was completed in 1906; that on or about the 23d day of February, 1907, the plaintiff rendered a bill to defendant for said sixth-story work, amounting to said balance of $2,881.55, which defendant refused to pay, and insisted that all of said work was covered by said contract and that he was under no obligation to pay therefor.

The court concluded that said plaintiff is entitled to judgment rescinding the contract and for judgment against the

defendant for the reasonable value of the entire work done, not exceeding, however, the rates of said contract less the amount of payments made; and, if the defendant so desires, the court will receive further evidence upon the subject of reasonable value of said work and material not exceeding the rates of said contract, or, if defendant desires, will cause said question to be determined by a jury. The defendant is required to serve and file written notice to this effect, if he so desires, within five days after service of a copy of these findings, and, unless defendant files such notice within such time, judgment will be rendered for plaintiff rescinding the contract and for the sum of $2,881.55, with interest from February 23, 1907, and the costs of this action.

Judgment was entered for plaintiff in accordance with the conclusions of law, from which this appeal was taken.

For the appellant there were briefs signed by *Edwin H. Abbot, Jr.,* of counsel (*Howard Morris* and *Charles M. Morris,* attorneys), and oral argument by *Mr. Abbot.*

For the respondent there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *F. C. Winkler.*

The following opinion was filed January 11, 1910:

Kerwin, J. While there are allegations in the complaint pertinent to an action for rescission, from the whole complaint it is manifest that the idea of the pleader was to state a cause of action for reformation. But the complaint also alleges a promise, either express or implied, on the part of defendant to pay for work in the sixth story what the same was reasonably worth. If it were necessary to pass upon the action of the court below in overruling the motion of defendant to make the complaint more definite and certain, we might find it difficult to sustain such ruling. But we do not pass upon the question, since it appears plain that the judgment below must be reversed upon the merits, and therefore technical errors need not be treated. It is entirely clear

from the findings and the evidence that no case for reformation was made. The contract attacked either by way of reformation or rescission is that made for the work on the six stories for the agreed price of $24,150. The minds of the parties met upon this contract, hence there is no ground for reformation. There was no mutual mistake. The parties to the contract made the contract they intended to make. Even if a mistake were made, it is established that it was the mistake of Mr. Grant, president of plaintiff; hence was not mutual. To allow reformation in this case would be to justify the court in making a contract for the parties which they themselves did not make. This the court cannot do. The plaintiff must show that the minds of the parties met upon the contract which it seeks to establish. *Lake v. Meacham,* 13 Wis. 355; *Ledyard v. Hartford F. Ins. Co.* 24 Wis. 496; *Petesch v. Hambach,* 48 Wis. 443, 4 N. W. 565; *Braun v. Wis. R. Co.* 92 Wis. 245, 66 N. W. 196; *Kruse v. Koelzer,* 124 Wis. 536, 102 N. W. 1072; *Auer v. Mathews,* 129 Wis. 143, 108 N. W. 45. The court below, however, did not reform the contract, but awarded judgment to the plaintiff for the reasonable value of the work done not exceeding contract rates, less payments. Counsel for respondent argues that a contract may be reformed where there is mistake on one part and fraud on the other, and cites on this point *James v. Cutler,* 54 Wis. 172, 10 N. W. 147. But the doctrine of that case is not out of harmony with other cases on the subject in this court. It recognizes the universal rule that there must be a contract upon which the minds of the contracting parties met, which is not expressed in the writing sought to be reformed, the purpose of the reformation action being to conform the written contract to the real contract made by the parties. And in case a fraud is practiced by one party by which the real contract is not reduced to writing and the other party by mistake receives such writing as the real contract, equity will lend its aid to the party thus defrauded.

In *James v. Cutler, supra,* there was an agreement to convey land, and it appeared that by mistake of both parties, or by the fraud of the grantor and mistake of the grantee, all the land agreed to be conveyed was not included in the deed, and it was held that equity would reform. But here no case was made for reformation for two reasons: First, no contract was made except that reduced to writing; and second, there was no fraud on the part of the defendant. The court below found that there was no fraudulent intent on the part of defendant, and could not have found otherwise on the evidence. But the court further found that the mistake on the part of Grant, president of the plaintiff, was induced by the acts and omissions of the defendant's agents, and it is upon this finding that the plaintiff predicates fraud. Just what acts and omissions of defendant's agents induced the contract is not specified in the finding. From the argument it is obvious that the contention is that because the agents of defendant knew that the architect of plaintiff first made a bid on five stories and that the plaintiff adopted five-story figures on a six-story contract, there was a mistake of fact sufficient to avoid the contract, or mistake on the part of plaintiff and fraud on the part of defendant entitling plaintiff to reformation. The proof shows clearly that Grant, president of plaintiff, made the contract with full knowledge that it covered six stories of the building, and signed it with such knowledge. The defendant also signed it so understanding it. No other or different contract was intended to be made by the parties. But counsel for plaintiff claims that Grant made a mistake in applying five-story figures to a six-story contract. If so, such mistake cannot be charged to defendant, but must rest upon the party whose negligence caused it. All the facts were within reach of Grant, and he had but to open his eyes and see them. His own architect, Heimerl, who had full knowledge of the facts, was within call, and could have been consulted upon the subject if Grant had de-

sired.   But he took it upon himself to figure the six-story
contract and make the figures, and the contract so made was
signed and agreed to by both parties.   There is no merit
whatever in the claim that the acts and omissions of the
agents of defendant were of such a character as to mislead
Grant.   There is no evidence that the agents of defendant
were conscious of Grant's alleged mistake, and no reason why
they should have been.   They knew that the architect of
plaintiff, with whom Grant was in communication, had full
knowledge of the facts, and had a right to assume that Grant
was fully informed.   We deem further discussion of the
point unnecessary.   It is very clear that no case for reforma-
tion of the contract was made.   *Kruse v. Koelzer,* 124 Wis.
536, 102 N. W. 1072.

The court below did not find that the plaintiff was entitled
to reformation, but rescinded the contract.   It is also clear
that the court was in error in rescinding the contract.   Even
if steps had been seasonably taken to rescind, there is no evi-
dence in the record which would warrant rescission.   We
have seen that there was no mutual mistake and that the
minds of the parties met upon the contract, and it does not
appear that any agent of the defendant knew that Grant or
any agent of the plaintiff was laboring under a mistake.
Under such circumstances a court of equity will not rescind.
*Johnson v. Parker,* 34 Wis. 596; *J. A. Coates & Sons v.
Buck,* 93 Wis. 128, 67 N. W. 23; *Brillion L. Co. v. Barn-
ard,* 131 Wis. 284, 111 N. W. 483.   The burden of proof
was upon the plaintiff to prove by clear and satisfactory
evidence that the defendant or his agents knew of Mr. Grant's
mistake.   *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074;
*Lavassar v. Washburne,* 50 Wis. 200, 6 N. W. 516; *Shaw v.
Gilbert,* 111 Wis. 165, 86 N. W. 188; *Deering v. Hoeft,* 111
Wis. 339, 87 N. W. 298; *Russell v. Scofield,* 134 Wis. 21,
113 N. W. 1094; *Parker v. Hull,* 71 Wis. 368, 37 N. W.
351; *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118; *Braun*

*v. Wis. R. Co.* 92 Wis. 245, 66 N. W. 196; *Blake O. H. Co. v. Home Ins. Co.* 73 Wis. 667, 41 N. W. 968; *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490. Nor is there any finding of knowledge on the part of defendant of Grant's alleged mistake, and there is a finding that there was no fraudulent intent on the part of defendant. Moreover, if the plaintiff ever had a right to rescind, it failed to seasonably exercise such right, but proceeded to complete the contract and brought an action to reform. One who seeks to rescind must act promptly upon discovery of the facts which he claims entitle him to rescission and take no steps in affirmance of the contract. *Booth v. Ryan,* 31 Wis. 45; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Pfeiffer v. Marshall,* 136 Wis. 51, 116 N. W. 871. And where a mistake occurs through a party's own want of ordinary care by reason of which he sustains loss, he cannot rescind. *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *Van Beck v. Milbrath,* 118 Wis. 42, 94 N. W. 657; *Metcalf v. Mut. F. Ins. Co.* 132 Wis. 67, 112 N. W. 22. It follows under the repeated decisions of this court upon the established facts that the plaintiff was not entitled to a rescission.

But it is further argued by counsel for respondent that by force of certain communications between Grant, president of plaintiff, and the agent of defendant, a new promise was made to pay for the sixth-story work. This contention is predicated upon the letter written by defendant to his agent set out in the statement of facts. Afterwards, in reply to a communication by plaintiff asking if it could draw for money, defendant replied positively that it could not, and that he was under no obligation to pay anything above the contract price and that he owed nothing legally, and that whatever he

might do was purely a gratuity. The letter above referred to was written by defendant in reply to a letter from Miss Bright, secretary of defendant, in which she stated that Grant claimed the alleged mistake, if not corrected, would cause the plaintiff a loss of $3,000. The case was tried on the theory of recovery on *quantum meruit* and not for amount of loss sustained. In fact, it is claimed by appellant that the evidence shows a profit of $672, but it is manifest that the question of whether there was a loss was not tried; the theory of the plaintiff being that it was entitled to recover the reasonable value of the work in the sixth story, not exceeding contract rates. The defendant contends that he is not liable for any sum above the contract price on any theory, upon the ground that the correspondence did not amount to a promise and that his agent had no authority to bind him in that regard. We are inclined to the opinion, and so hold, that the plaintiff is entitled to recover whatever loss it actually sustained upon the contract made in writing, but beyond that plaintiff has made no case entitling it to recover anything. Of course, plaintiff did not prosecute the case, as we have seen, upon the theory of recovery for the loss sustained, and therefore should pay the costs incurred. Upon the record and under the rules of pleading and procedure, this court would doubtless be justified in ordering dismissal of the action on the merits. But, under the liberal rules of practice in equity cases, we think the court is warranted in holding the case for the purpose of ascertaining the amount of loss, if any, that has been sustained by plaintiff on the contract and thus end the litigation in this suit. *Harrigan v. Gilchrist.* 121 Wis. 127, 99 N. W. 909; *Fleming v. Ellison,* 124 Wis. 36, 102 N. W. 398; *Franey v. Warner,* 96 Wis. 222, 71 N. W. 81; *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532; *Cole v. Getzinger,* 96 Wis. 559, 71 N. W. 75; *Gates v. Paul,* 117 Wis. 170, 94 N. W. 55; *Stevens v. Coates,* 101 Wis. 569, 78 N. W. 180. We shall therefore order the case dismissed

unless the plaintiff elects to take further evidence on the question of whether it did in fact sustain a loss on the contract and the amount thereof, and pay all costs incurred up to the time of filing such election. By the word "loss," as above used, is not meant loss of profits, but any sum in excess of the contract price necessarily expended in doing the job.

*By the Court.*—The judgment is reversed, and the cause remanded to the court below with directions to dismiss the complaint unless plaintiff shall, within twenty days from the filing of the *remittitur,* elect to take further evidence on the issue as to whether or not there was a loss on the contract, and, if so, the amount thereof, and pay all costs up to the time of filing such election, and, in case of failure so to do, the action be dismissed upon the merits, with costs.

Upon a motion for a rehearing there was a brief for the respondent signed by *Winkler, Flanders, Bottum & Fawsett,* attorneys, and *F. C. Winkler* and *Charles F. Fawsett,* of counsel; and for the appellant a brief by *Frank M. Hoyt.*

The motion was denied April 5, 1910.