VAN BECK, Respondent, vs. MILBRATH and another, imp.,
Appellant.

*April 21—May 8, 1903.*

*Mortgages: Reformation of instruments: Failure to read: Acquiescence: Laches.*

1. Where the facts and circumstances of the execution and delivery of a note and mortgage show that the mortgagee, in accepting a note and mortgage signed by one defendant only, believing all the defendants had signed, had neglected to examine the papers or have his agent read them, although nothing transpired to interfere with either acquiring full knowledge of their contents, such failure to exercise ordinary care and prudence to obtain knowledge of the contents of the instruments, will not justify a finding of the trial court that defendants were guilty of a fraud, or warrant a reformation thereof. .

2. In such case, plaintiff discovered, soon after receiving the papers, that they were not signed by all the defendants as he supposed, and not only neglected to take the necessary steps to repudiate the transaction, but retained the note and mortgage and collected interest for several years without any intimation that he did not intend to accept the instrument in that form. *Held*, that he thereby elected to abide by and affirm the transaction, as embodied in the note and mortgage in the form delivered to him.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

This action is brought by the plaintiff to reform a note and mortgage executed by the defendant F. J. Holtz to plaintiff on October 4, 1897, to secure the payment of $3,500. The material facts involved in this appeal are as follows: Plaintiff owned property in Estes' subdivision and in Van Beck's subdivision in the city of Milwaukee, incumbered by a mortgage of $600. The defendants C. W. *Milbrath* and W. C. and F. J. Holtz were the owners under a land contract of twenty acres located in the town of Lake, near Milwaukee, on which there was an unpaid balance of $4,600, due July 19,

1897. Plaintiff and said three defendants .agreed to trade properties upon the following conditions: ·The defendants *Milbrath* and *W. C.* and F. J. Holtz were to convey to plaintiff their right under the land contract, he agreeing to assume the indebtedness of $4,600, with interest, and in consideration thereof to convey to those defendants the prcperty in both the Estes and Van Beck subdivisions subject to the $600 mortgage. These defendants were to execute and deliver to plaintiff a note for $3,500, with interest, in part consideration for their exchange of properties, secured by a mortgage on all the lots in Estes' subdivision. The defendants *Milbrath* and *W. C.* and F. J. Holtz caused a deed to be prepared conveying plaintiff's property to F. J. Holtz. This was not understood by plaintiff, who executed the deed without reading it, believing the conveyance was to the three defendants jointly. The defendants also caused to be drawn and executed by F. J. Holtz a promissory note of $3,500, and a mortgage covering the land in Estes' subdivision, securing the payment of said note. The note and mortgage ran to plaintiff, who was not apprised of the fact that defendants *Milbrath* and *W. C. Holtz* were not named therein as makers with F. J. Holtz. One Thomas A. Hanson acted as agent in negotiating the trade between the parties, and plaintiff relied on him to act in his interest, believing that he was acting solely for him. Hanson in fact acted for both parties, and received a commission from defendants. Plaintiff did not read ·the deed or note and mortgage, nor request Hanson to inspect and read the same to or for him. He learned the contents thereof shortly after the deed and mortgage had been recorded on October 6, 1897. The note and mortgage are now the property of the plaintiff, and are due, with interest thereon from April 4, 1900. F. J. Holtz, the mortgagor, is insolvent. The defendants defaulted in the payment of taxes on the mortgaged premises for the years 1897 to 1901, inclusive. After learning that *Milbrath* and *W. C. Holtz* were

not included as parties to the written instruments, it appears from plaintiff's evidence that he and defendants had an interview on the subject, and that he relied upon their assurance that everything would be all right, and the note would be paid. The court decreed a reformation of the note and mortgage to embrace defendants *Milbrath* and *W. C. Holtz* as parties thereto, and holding them personally liable for the indebtedness evidenced thereby.

*Julius E. Roehr,* for the appellant.

For the respondent there was a brief by *Toohey & Gilmore,* and oral argument by *J. L. Gilmore.*

SIEBECKER, J. This action was brought to foreclose a mortgage upon real estate. The complaint charges that plaintiff became the holder and owner of the note and mortgage in question pursuant to an exchange of properties between himself and defendants *Milbrath* and *W. C.* and *F. J.* Holtz, on October 4, 1897. It is further alleged that he was defrauded in this transaction by defendants, who induced him to take this note and mortgage executed by defendant F. J. Holtz in place of a note and mortgage executed by the three defendants jointly, and that they fraudulently omitted from the mortgage several parcels of real estate which it had been agreed should be included. He demands that the note and mortgage be reformed to cover all the real estate specified in the complaint, and that the defendants *Milbrath* and *W. C. Holtz* be made parties thereto, and a foreclosure of the mortgage as reformed be decreed. The court found that the charges made in the complaint were substantiated by the evidence, except that the real estate described in the mortgage covered all the property which the parties had agreed to include therein. The defendants challenge the findings upon the evidence as to all of the charges of fraud and the conclusion of law deemed applicable to the facts found in the case. This state of facts presents two questions: (1) Was the plaintiff bound by his acceptance of the note and mortgage

upon the facts and circumstances under which he received them, without knowing by whom the instruments were actually executed? And (2) how are his rights affected by his subsequent conduct in retaining the same for some four years, collecting interest thereon, after knowing by whom they were actually executed, without complaint of any fraudulent conduct by the defendants and without repudiation of the transaction?

1. It appeared upon the trial that plaintiff and Hanson had ready means of knowing the contents of these instruments by simple inspection thereof before and at the time they were delivered. Plaintiff's means of knowledge concerning the transaction complained of, and whether he or Hanson, by the exercise of ordinary care and prudence, ought to have known the contents of these instruments, are controlling facts in the case.

"The law requires men in their dealings with each other to exercise proper vigilance, and apply their attention to those particulars which may be supposed to be within reach of their observation and judgment, and not close their eyes to the means of information which are accessible to them." *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Dowagiac Mfg. Co. v. Schroeder,* 108 Wis. 109, 84 N. W. 14; *Bostwick v. Mut. Life Ins. Co.* 116 Wis. 392, 92 N. W. 246.

The facts and circumstances of this transaction show that the plaintiff made no effort to read the note and mortgage before accepting them, nor did he request Hanson to do so for him, though nothing transpired to interfere with either in acquiring full knowledge of their contents. Such omission on their part casts a serious doubt upon the conclusion of fact found by the trial court that the defendants were in fact guilty of fraud as charged.

2. Further, is the plaintiff precluded from demanding relief in equity for the wrong he complains of in view of his conduct after he became fully possessed of the truth respecting the transaction? Was it not plainly his legal duty to take proper steps to rescind the contracts made, or to affirm

the transaction, and ask for their reformation, so that they would comply with the terms of the agreement upon the grounds now presented for relief? He not only refrained from repudiating the transaction, but accepted the benefits thereof, collecting interest as it became due, and treating it as a binding agreement in various ways in his dealings with the parties for a period of some four years, without any intimation that he did not intend to accept both note and mortgage as they were written. The clear inference from his conduct is that he accepted the note and mortgage and elected to abide the agreement just as therein stated, leading the parties to believe that he acquiesced in the entire transaction expressed by the written instruments.

"Acquiescence in the wrongful conduct of another, by which one's rights are invaded, may often operate, upon the principles of and in analogy to estoppel, to preclude an injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. . . . The same rule applies, and for the same reasons, to a party seeking purely equitable relief against fraud, such as the surrender or cancellation of securities, the annulling of a transaction, and the like. Upon obtaining knowledge of the facts he should commence the proceedings for relief as soon as reasonably possible. Acquiescence consisting of unnecessary delay after such knowledge will defeat the equitable relief." Pom. Eq. Jur. § 817.

The plaintiff neglected to take the necessary steps to enforce relief, and must be held in law to have elected to abide by and affirm the transaction as embodied in the note and mortgage in the form delivered to him. *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757; *Bostwick v. Mut. L. Ins. Co. supra.* For these reasons the judgment must be reversed.

*By the Court.*—That part of the judgment entered against the appellants *Charles W. Milbrath* and *W. C. Holtz* is reversed, and cause remanded, with directions to dismiss the complaint as to them.