JENTZSCH, Respondent, vs. ROENFANZ and others, Appellants.

*November 12—December 9, 1924.*

*Reformation of deed: Laches: Mutual mistake: Evidence: Sufficiency: Relevancy: Subsequent acts of parties.*

1. A grantor who had been in possession of a strip of land covered by the description in a deed to an adjoining owner since the erection of a fence following a dispute, was not barred by laches from beginning an action, on the ground of mutual mistake, to reform the deed so as to exclude the disputed strip from the land originally described. p. 193.

2. A mistake, in order to be mutual, must be reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument; but where a mistake was made inadvertently on one side and yet in good faith by the other, a written instrument cannot be reformed to conform to the views of the party seeking reformation, but only to the original views of both parties. p. 193.

3. In an action by the grantor in a deed to reform the deed so that the description would conform to that which plaintiff alleged the parties intended to convey, the evidence is *held* not to show a mutual mistake entitling the plaintiff to reformation. p. 194.

4. While evidence as to the subsequent acts of the parties is relevant, upon the whole case it must appear that the mistake was the mutual mistake of the parties at the time the deed was executed; and while the action of the grantor in erecting a fence on the disputed line is a very persuasive circumstance it is not controlling. p. 194.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Reversed.*

Action to reform deed. The controversy in this case can be much more easily understood by reference to the map, Exhibit B, reproduced on page 190.

Hawley road runs north and south, Oklahoma avenue east and west. In 1903 the plaintiff was living with her husband on a part of lot 1. Adjoining this property on the

east and south was lot 2 of Hegelmeyer's subdivision. The entire lot contains 8.036 acres of land. The north end fronts on Oklahoma avenue and the west end on Hawley road. The defendant *Henry J. Peters* and *Hulda Peters,*

his wife, at this time were living on Clinton street in the city of Milwaukee, some miles distant, where they were engaged in conducting a grocery business. *Peters* had

lived on a farm until he was eighteen years of age, and since that time had been engaged in the grocery business. Lot 2 was owned by a Mr. Eckel. *Friedericke Jentzsch* was desirous of acquiring lot 2, and her husband, acting for her, endeavored to secure ownership thereto. The price fixed by Mr. Eckel could not be met by the Jentzsches and they solicited the purchase of that part fronting on Hawley road by *Henry J. Peters,* who was a brother-in-law. The price given by Mr. Eckel was $350 per acre, or $1,050 for the three acres fronting on Hawley road, and $300 an acre for that fronting on Oklahoma avenue. After some negotiations the parties met at the office of Louis Fulner, a notary public, who drew the papers. Eckel conveyed his entire interest in lot 2 to *Friedericke Jentzsch.* She then conveyed the "south three acres of lot 2" to *Henry J. Peters,* and it is undisputed that he paid $1,050, which passed directly to Eckel. The five-acre portion was paid for, $500 in cash and by the assumption of a $1,000 mortgage, which was then a lien against lot 2. Shortly thereafter Mr. Jentzsch took an old abstract to an abstract company and ordered an extension thereof as to the south three acres of lot 2, which abstract was delivered to *Peters.* Jentzsch continued to occupy the entire premises and occupied a portion thereof conveyed to *Peters* under a lease. A family dissension brought an end to their friendly relations, and in subsequent years the premises were occupied by tenants of *Peters.* Shortly after the trouble between the two families Jentzsch constructed a fence, which was an extension of the east line of lot 1 to the south line of lot 2, indicated on the diagram as "Disputed fence," and thereafter *Peters* and his tenants occupied and worked that part of lot 2 lying west of the east line of lot 1. This situation continued until 1921, when the defendant *August Roenfanz* became interested in the property and purchased the *Peters* interest, it being conveyed to him as the south three acres of lot 2. In May, 1921, the property was surveyed and the true boundaries of the south three acres were

for the first time. staked out and · established. *Roenfanz* thereupon requested Jentzsch to remove the disputed fence. This Jentzsch refused to do, and thereupon *Roenfanz* removed the fence. *Roenfanz* received his title from *Hulda Peters,* wife of *Henry J. Peters,* who had become the owner thereof by mesne conveyances.

This action. was begun, and in the complaint it was alleged that the plaintiff is the owner in fee simple of said lot 2 except that portion thereof described as follows, to wit:

"Commencing at the southwest corner of said lot, thence east along the south line of said lot a distance of 519.13 feet to a point, said point being at the intersection of said south line with the westerly boundary line of the northerly portion of said lot 2, if extended; thence north along said line so extended a distance of 188.02 feet to the intersection of said line with the north line of the south portion of said lot (which south portion fronts upon the Hawley road on the west) ; thence west along the north line of said south portion of said lot to the west line of said south portion of said lot; thence south on said west line to the point of commencement."

It is then alleged that on November 17, 1903, the plaintiff sold and attempted to convey that portion of lot 2 described as above. It is further alleged "that by the mutual mistake of said parties the conveyance of said premises intending to convey the same from plaintiff to said defendant *Henry J. Peters* erroneously described said lands as 'the south three acres of lot 2.' "

The complaint asks that the deed be reformed so that the description therein would conform to that hereinbefore set out. The defendants answered, and their contentions, which are already indicated, are set out in considerable detail.

Upon the trial the court found in favor of the plaintiff and indicated the ground upon. which ·the decision rests in part as follows:

"I have come to the conclusion that plaintiff's claim is corroborated by the subsequent acts of the parties and par-

ticularly by their conduct with reference to the erection of the fence in 1905, the use of the land east of the fence, and the use of the thirteen-foot strip joining the south line of lot 1.    Particularly significant, too, it seems to me, is the transaction between defendant *Peters* and defendant *August Roenfanz.*    Defendant *Peters,* at no time in their negotiations, indicated to *Roenfanz* that the land to be conveyed to him included that portion east of the fence, and *Roenfanz* understood that the fence was the east line of his land."

The court further found that plaintiff was not guilty of laches, and judgment was entered accordingly, reforming plaintiff's deed, from which judgment the defendants appeal.

For the appellants there was a brief by *Perry & Perry* of Milwaukee, and oral argument by *C. Stanley Perry.*

For the respondent there was a brief by *George E. Ballhorn* and *George H. Katz,* both of Milwaukee, and oral argument by *Mr. Katz.*

ROSENBERRY, J.    If the trial court is right in finding that there was a mutual mistake of the parties in the deed executed by the plaintiff to *Henry J. Peters* on November 17, 1903, it is quite clear that there was no such laches on the part of the plaintiff as would bar her right to relief in this action.    It is not denied that she has been in the actual possession of the disputed land ever since the erection of the disputed fence, following the family difficulty in 1905.

The determination of this case must rest upon the question of whether or not there was a mutual mistake.    A mistake, in order to be mutual, means one reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument.    *Botsford v. McLean,* 45 Barb. 478, 481.

If the mistake has not been mutual but has been made inadvertently on one side and yet in good faith by the other, if any amendment or reformation of the contract can, under any circumstances, be made, it cannot be made so as to make the agreement conform merely to the views of the party

seeking reformation, but only to the original views of both parties. See 5 L. R. A. p. 157, note: "Mutuality of mistake necessary to reformation of contract," and cases cited. See, also, 23 Ruling Case Law, p. 327, § 20, and cases cited.

A careful reading of the testimony in this case indicates that no other tract of land was talked about, discussed, or described in the negotiations between Jentzsch and *Peters* except the south three acres of lot 2 fronting on Hawley road. While in the testimony of Mr. Jentzsch he states that there were half a dozen talks, there seem to have been two or at most three. The parties were never upon the ground. The boundaries of no particular tract were pointed out. The conveyance as drawn by the notary conformed to the wishes of the parties in that the *Peters* become the owners of three acres and Jentzsch the owner of five acres, according to their original intention. There is no evidence, except a statement made by Mr. Jentzsch, which indicates that the southeasterly corner was taken into consideration or whether the parties knew or considered whether it belonged to the Jentzsch five acres or the *Peters* three acres. In addition to that, the description in the deed is clear and there can be no mistake in regard to it. Whether the north line of the three acres conformed to the south line of lot 1 or not, it by its terms extended across the entire south end of lot 2. The south three acres of lot 2 could not by any possibility be the three acres lying immediately south of lot 1, nor did the notary attempt to describe any such piece of land. The entire negotiations carried on between the parties related to the south three acres. That was the language used. Mr. Jentzsch now claims that it meant that part of it lying immediately south of lot 1. There is no evidence to show that *Mr. Peters* ever understood it in that sense. While evidence as to the subsequent acts of the parties may be properly received in evidence, upon the whole case it must appear that the mistake was the mutual mistake of both parties at the time of the execution of the conveyance sought to be reformed. The

erection of the disputed fence by Jentzsch is a very persuasive circumstance, but is not controlling. It appears that the southeast corner, which is in dispute, is a creek bottom, not arable, and of little value for farming purposes. *Mr. Peters* may very well have consented to the erection of the fence rather than to carry the family disputes farther. In truth and in fact, no one seems to have known where the boundaries of the three acres were until the defendant *Roenfanz* had a survey made in 1921.

While a mistake of one of the parties in a proper case may be grounds for rescission or cancellation, in order that there may be a reformation the mistake must be mutual. In other words, the court cannot rewrite the contract which the parties have made so as to express an agreement which the parties had not entered into. *Grant M. Co. v. Abbot,* 142 Wis. 279, 124 N. W. 264.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the plaintiff's complaint.