CARNEY-RUTTER AGENCY, INC., Plaintiff and Respondent, vs. CENTRAL OFFICE BUILDINGS, INC., Defendant: MITCHELL BUILDING CORPORATION, Defendant and Appellant.

*February 2—March 3, 1953.*

246

For the appellant there were briefs by *George A. Gessner,* attorney, and *Charles D. Ashley* of counsel, both of Milwaukee, and oral argument by *Mr. Gessner.*

For the respondent there was a brief by *Gold & McCann,* and oral argument by *Richard A. McDermott,* all of Milwaukee.

FAIRCHILD, J. With respect to this appeal, respondent urges that it was proper for the trial court to have denied Mitchell's application for a summary judgment because there are disputed questions of fact. In addition to the verified complaint and answer, the trial court had before it the adverse examinations of Messrs. Carney and Rutter, various affidavits, and considerable documentary evidence, such as deeds of conveyance and letters passing between the parties. There are some disputed questions of fact, it is true, but these are entirely immaterial to the questions of law presented and therefore do not afford a basis for denying the application for summary judgment. In *State ex rel. Salvesen v. Milwaukee,* 249 Wis. 351, 355, 24 N. W. (2d) 630, this court stated:

"It is also argued that the case is not a proper one for a summary judgment. We have found no dispute in the facts save in the respect just set forth and we have pointed out that this difference is not significant. The material issues are legal rather than factual and the case falls squarely within the purpose of sec. 270.635, Stats., the summary-judgment statute."

The quotation immediately above was recently cited with approval in *Des Jardin v. Greenfield,* 262 Wis. 43, 50, 53 N. W. (2d) 784.

As a first cause of action the complaint of respondent alleges the following two breaches of its lease of December 30, 1947, with Central: (1) Inasmuch as a warranty of title

inheres in a conveyance of an interest in land such as the five-year lease in question, such warranty was breached by reason of the fact that there was outstanding at the time the lease was executed an unaccepted offer to purchase the Mitchell Building. (2) Inasmuch as the second notice to terminate, dated September 29, 1948, nullified the first notice to terminate, dated September 28, 1948, and inasmuch as the second notice was given after the conveyance, Mitchell had become the lessor and had no right to terminate until such time as it in turn should sell the building.

We find it unnecessary on this appeal to determine the issue of whether there is an implied warranty of good title on the part of a lessor to a lessee where the term is for more than three years. Respondent relies on 51 C. J. S., Landlord and Tenant, p. 909 *et seq.*, sec. 266 *et seq.*; *Petre v. Slowinski*, 251 Wis. 478, 483, 29 N. W. (2d) 505; *Schwartz v. Westbrook* (C. A. Dist. Col.), 154 Fed. (2d) 854, as authorities holding that there is such a warranty of title.

The facts with regard to the claimed unaccepted offer to purchase are as follows: On August 26, 1947, some four months before the execution of the lease of December 30, 1947, Charles Realty Company had submitted to Central an offer to purchase the Mitchell Building and another building. A $25,000 earnest-money check accompanying the offer was to be held in trust account by a real-estate broker through whom the offer was submitted. The president and principal stockholder of Charles Realty Company was Attorney Charles D. Ashley, who, respondent claims, was also the principal or sole stockholder of Ralco Corporation and Mitchell. It is respondent's position that all three of these corporations were the *alter ego* of Attorney Ashley. By terms of the offer, the earnest-money check was to have been returned to the offeror if Central did not accept the offer by September 4, 1947. Central claims that it rejected the offer on August 26, 1947. However, for some reason the real-

estate broker who held the $25,000 check did not return it until some months after the execution of the lease of December 30, 1947.

No authorities are cited in respondent's brief to support its contention that an unaccepted offer to purchase, outstanding at the time of the execution of the lease, constitutes a breach of an implied warranty of title, and we believe it would be illogical to so hold.

Any suggestion by respondent's counsel that the offer of Charles Realty Company of August 26, 1947, might have been accepted prior to the making of the new lease of December 30, 1947, is inconsistent with the allegation in respondent's complaint that:

". . . on information and belief, the offer to purchase made to the defendant, Central Office Buildings, Inc., through the said Charles Realty Company was the offer of the said Charles D. Ashley, and, on information and belief, the said offer *was accepted by the defendant, Central Office Buildings, Inc., sometime during the month of September, 1948, modified only with respect to total purchase price and financing, . . .*" (Emphasis supplied.)

Respondent is bound by this allegation that the offer to purchase, which it claims was outstanding on August 26, 1947, was not accepted until September, 1948. An unaccepted offer cannot constitute a cloud on title. Therefore respondent cannot properly claim breach of lease by Mitchell as subsequent owner of the leased premises.

With respect to respondent's claim that the second notice of termination, dated September 29, 1948, nullified the first notice of termination, dated September 28, 1948, the undisputed fact, as disclosed by respondent's letter of October 30, 1948, set forth in the statement of facts preceding this opinion, is that respondent relied on the first notice, not on the second, when it agreed to vacate the premises. Such letter specifically refers to the September 28th notice and contains

no reference to the September 29th notice. The reason why respondent desires to establish that the September 28th notice was rendered legally ineffective by the September 29th notice is that a showing of the conveyance of the leased premises from Central to Mitchell after the September 28th notice, but prior to the September 29th notice, would bring the case at bar within the facts of *Gorman v. General Outdoor Advertising Co., Inc.,* 320 Ill. App. 339, 50 N. E. (2d) 854; *Gates v. Norton,* 228 Ill. App. 96; and *Payne v. Brathwaite,* 113 Misc. 517, 185 N. Y. Supp. 107, which held that a grantee, such as Mitchell, cannot exercise the right given the lessor to terminate in the event of sale after the conveyance has been made to the purchaser. In any event, the respondent, by removing from the premises pursuant to the September 28th notice, has waived any defect in the manner of exercising the option. See *Gostin v. Needle,* 185 Md. 634, 45 Atl. (2d) 772, 163 A. L. R. 1013.

As a second cause of action, the complaint states respondent's claim that the termination clause of the lease should be reformed so as to limit the right of the lessor to terminate in the event of a sale to a situation where the purchaser required the use and occupancy of the leased premises solely for purchaser's own purposes. Respondent alleges that the termination clause was utilized for the benefit of the purchaser in an effort to obtain an increased rental from the leased premises, and not for the purpose of ejecting the respondent so that the purchaser could occupy the leased premises itself.

It appears that the respondent corporation had one other stockholder besides Carney and Rutter, but, in any event, these two men handled the negotiation and execution of the lease of December 30, 1947. Carney testified in his adverse examination that Mr. Timme, then a director and officer of Central, asked Rutter and Carney to sign the lease which had not been theretofore submitted to them for examination.

Carney inquired whether the lease was "a standard form of lease they [Central] were using," and Timme said it was. Carney thereupon signed it without reading it, except to see that it provided for a five-year term. Thereafter Carney did not read the lease until he received the September 28, 1948, notice. Rutter testified that he read the lease for the first time about October 1, 1948, which was approximately nine months after it had been executed.

Respondent makes no claim of fraud but contends that it is entitled to reformation of the termination clause because of alleged mutual mistake and bases its claim upon the testimony given by Timme on adverse examination. At the time of giving such testimony, Timme was no longer an officer of Central, but only a director. His testimony was to the effect that when the printed lease form was drafted for use by Central in 1933–34 in making leases of office space in the Mitchell Building, the termination clause in the event of sale was inserted in order to make it possible for a purchaser to move in and occupy the building for itself. Respondent contends that this testimony negatived any intention of Central to permit the termination clause to be used for the benefit of a purchaser who did not require the building for its own use but sought to take advantage of the clause in order to increase rents.

The facts already related clearly establish that there was no mutual mistake as to such termination clause, since Carney and Rutter, as officers representing the respondent in the execution of the lease, had no intention whatever with respect to the termination clause. They had not even read it and did not know that it was in the lease. This court in *Kadow v. Aluminum Specialty Co.* 253 Wis. 76, 78, 33 N. W. (2d) 236, stated:

"To justify reformation the evidence must be clear and convincing that both parties intended to make a different instrument, and must also clearly show that both had agreed

upon facts which were different than those set forth in the instrument." Citing *Kruse v. Koelzer,* 124 Wis. 536, 102 N. W. 1072; *Miller v. Stanich,* 202 Wis. 539, 548, 230 N. W. 47, 233 N. W. 753; *Jentzsch v. Roenfanz,* 185 Wis. 189, 201 N. W. 504.

Furthermore, the negligence of respondent's officers in not reading the lease, which reading would have disclosed the existence of the termination clause, bars them from having reformation. This principle was announced in *Kruse v. Koelzer, supra,* as follows (p. 541):

"It is well settled that, where a party accepts a written instrument in consummation of an agreement entered into, it is his duty to know its contents, unless there be fraud or mistake of such a nature that he could not reasonably have informed himself when put upon inquiry. *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Van Beck v. Milbrath,* 118 Wis. 42, 94 N. W. 657; *Herbst v. Lowe,* 65 Wis. 316, 26 N. W. 751; *Sanger v. Dun,* 47 Wis. 615, 3 N. W. 388; *Fuller v. Madison M. Ins. Co.* 36 Wis. 599. Men, in their dealings with each other, cannot close their eyes to the means of knowledge equally accessible to themselves and those with whom they deal, and then ask courts to relieve them from the consequences of their lack of vigilance. *Mamlock v. Fairbanks,* 46 Wis. 415, 1 N. W. 167; *Dowagiac Mfg. Co. v. Schroeder,* 108 Wis. 109, 84 N. W. 14."

In view of the fact that there are no material disputed questions of fact which necessitate determination by trial, but only the questions of law which have been determined in this opinion· it was error for the trial court not to have granted Mitchell's motion for summary judgment.

*By the Court.*—Order reversed and cause remanded with directions to enter judgment dismissing the action as to the defendant Mitchell Building Corporation.

For the appellants there was a brief by *Hannan, Johnson & Goldschmidt,* attorneys, and *Herbert L. Wible* of counsel, all of Milwaukee, and oral argument by *Mr. Wible.*