LEUCHTENBERG, Appellant, vs. HOESCHLER, Respondent.

*October 12—November 8, 1955.*

152

For the appellant there were briefs by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Leonard F. Roraff*.

For the respondent there was a brief by *Steele, Mau, Toepel & Klos* and *Bosshard & Arneson,* all of La Crosse, and oral argument by *Eugene A. Toepel.*

CURRIE, J. It is the contention of counsel for plaintiff on this appeal that upon the pleadings, affidavits, and adverse examinations considered by the trial court, in passing upon the motions of both parties for summary judgment, that it stands undisputed that the offer to purchase signed by the plaintiff was never accepted by the Warrens, as owners, in the form in which plaintiff signed the same, but instead plaintiff's said written offer had been subsequently altered by Evenson without his knowledge or consent. The claimed alteration consisted of striking out the figure "150" in the description of the premises appearing in the offer, and substituting the figure "120" therefor.

On this appeal we are not confronted with any issue as to whether the alteration was a material one. As this court

stated in its decision in *Hess v. Holt Lumber Co.* (1921), 175 Wis. 451, 455, 185 N. W. 522:

" 'The acceptance of an offer upon terms varying from those of the offer, *however slight,* is a rejection of the offer.' " (Emphasis supplied.)

It would appear that the real reason which actuated the plaintiff in refusing to proceed with the purchase of the Warren property was his failure to find a source to finance the purchase because an independent appraisal disclosed that the fair market value of the premises was $2,500 less than the purchase price stipulated in the offer signed by plaintiff. Nevertheless, defendant had no right to retain the $700 earnest money in the absence of a binding contract to purchase having been entered into by plaintiff.

The pleadings and affidavits before the court raise issues of facts on such questions as to whether the Warrens did accept the altered offer to purchase within the limited time specified in such offer and as to whether such acceptance, if made, was communicated to the plaintiff. However, it has been repeatedly held by this court that disputed questions of fact, where immaterial to the questions of law presented, do not afford a basis for denial of an application for summary judgment. *Hafemann v. Korinek* (1954), 266 Wis. 450, 453, 63 N. W. (2d) 835; *Carney-Rutter Agency v. Central Office Buildings* (1953), 263 Wis. 244, 248, 57 N. W. (2d) 348; and *Des Jardin v. Greenfield* (1952), 262 Wis. 43, 50, 53 N. W. (2d) 784. If there was no dispute before the learned trial court on the issue of plaintiff's offer having been altered by Evenson after plaintiff had signed the same, which alteration had not been consented to by plaintiff, then all other disputed issues of fact are immaterial on the question of whether summary judgment should have been granted in plaintiff's behalf.

The issue on this appeal, therefore, narrows down to whether the alteration made by Evenson in the description of the premises contained in the offer to purchase occurred after plaintiff signed the same without his knowledge or consent.

The plaintiff's affidavit stated unequivocally that the alteration made in the property-description portion of the offer to purchase changing the depth of the lot from "about 150 feet" to "about 120 feet" was made after plaintiff signed the offer and without his knowledge or approval. The defendant apparently concedes the making of the alteration but contends that there is an issue of fact as to whether it took place before or after the plaintiff signed. Evenson, upon his adverse examination, testified that the figure "120" substituted for the figure "150," which had been stricken out in the property-description part of the offer, looked as if it might have been written by him, but that he could not say whether or not it had been done after plaintiff had left, following his signing of the offer. Plaintiff's affidavit above referred to had already been served upon defendant's counsel prior to the time the Evenson affidavit was subscribed and sworn to. In spite of the fact that plaintiff's affidavit categorically stated that the alteration had taken place after plaintiff had signed the offer without his knowledge and consent, Evenson, in the latter's own affidavit made no denial thereof and stated no facts inconsistent therewith. The Evenson affidavit did state that plaintiff signed the offer to purchase, that Evenson left a copy of such offer with plaintiff, and that on April 1, 1953, Evenson submitted such offer to the Warrens, who executed the acceptance appearing in the offer by affixing their signatures thereto.

There is no question in the record before us but that the copy of the offer left with plaintiff did not contain the altered description changing the depth of the lot from "about 150 feet" to "about 120 feet," because plaintiff attached to his affidavit the copy of the offer which Evenson left with him,

which copy does not contain the alteration that appears in the copy purporting to be signed by the Warrens. A comparison of this with the original of such offer attached to defendant's answer discloses that, except for the alteration and the completion of the acceptance by the Warrens, the former is a carbon copy of the latter.

The affidavits of Warren and Toepel do not touch upon the point of when the alteration was made in the offer to purchase, and, therefore, except for such omission, they have no significance on this appeal.

Evenson testified in his adverse examination that the offer to purchase, which is on a printed form, was filled in by typewriter at defendant's real-estate office and there signed by plaintiff. It also appears that the same was typed in triplicate.

The plaintiff in his adverse examination was asked whether Evenson had ever told plaintiff that Evenson had had the acceptance on the offer to purchase signed by the Warrens. To this question the plaintiff answered:

"No I don't think he ever did; this was the paper he gave me. Evenson and I signed this agreement, he filled it out, Evenson informed me at that time, and before, he impressed upon me very much he had worked for Standard Oil in their real estate and was quite a real-estate man. He had gone to legal matters. He corrected one paper, they made a mistake and he checked some more. I figured everything was O. K. Then we had these copies and I took my copy, he took the other two, and that's what I had."

Counsel for the defendant contends that the above-quoted answer of plaintiff is subject to the inference that the correction Evenson made in "one paper" was the changing of the figure "150" in the property description of the offer to purchase to "120," and that defendant should be given an opportunity to cross-examine plaintiff on such point. This is the crux of the argument advanced against granting plaintiff's motion for summary judgment.

In support of such position, defendant's brief cites our decision in *Putman v. Deinhamer* (1953), 265 Wis. 307, 311, 61 N. W. (2d) 319, where we stated:

". . . where the testimony offered to establish a fact is the oral testimony of a person claimed to have done the fact, the opposite party is entitled to a trial by jury, at which witnesses may be cross-examined to establish any weakness or flaw in their testimony; and a jury is permitted to pass upon the veracity and accuracy of the witness."

The issue before the court in *Putman v. Deinhamer, supra,* was whether a defendant insurance company had given proper notice to the insured of the cancellation of an automobile-liability insurance policy prior to the date that the insured vehicle had been involved in an accident giving rise to plaintiffs' damages. The policy provided that mailing of the notice of cancellation should constitute sufficient proof of the giving of the notice. In support of its motion for summary judgment, the defendant insurance company filed affidavits of its office employees as to the typing and mailing of the notice of cancellation. The plaintiffs interposed counteraffidavits denying receipt by the insured of the notice of cancellation and denying on information and belief that any such notice had been mailed. Thus, in the *Putman v. Deinhamer Case* the trial court was apprised that the fact of mailing was in dispute while in the case at bar there was nothing contained in the affidavits filed in behalf of the defendant raising any issue with the positive statement in plaintiff's affidavit that the alteration had been made in the offer to purchase after plaintiff had signed the same and without his knowledge or consent.

If in the instant case an affidavit had been filed by defendant, or one of his counsel, stating that an issue was raised as to the time when Evenson made the alteration in the offer to purchase, and that defendant intended at the trial to cross-examine plaintiff with respect to the hereinbefore-quoted

ambiguous answer given by him in his adverse examination, it would have been the duty of the trial court to have denied the plaintiff's application for summary judgment. However, the defendant did not raise such issue below but apparently was content to rely on the argument that the alteration was immaterial in nature, and, therefore, did not prevent a valid contract from coming into being upon the Warrens' acceptance of the altered offer. We are constrained to hold that the defendant should not be permitted to raise the issue, as to the time of making the alteration, for the first time on the appeal to this court.

*By the Court.*—Order reversed, and cause remanded with directions to enter summary judgment in accordance with the prayer of plaintiff's complaint.