**SUPERVIEW NETWORK, INC., Plaintiff,**

v.

**SUPERAMERICA, A DIVISION OF ASHLAND OIL, INC., Defendant.**

**No. 92–C–453.**

United States District Court, E.D. Wisconsin.

July 28, 1993.

**1394**

Andrew Riteris, Michael, Best & Friedrich, Milwaukee, WI, for plaintiff.

Michael Cohn, Craig Zetley, Zetley Law Office, Milwaukee, WI, for defendant.

---

1. The court's determination of whether any material facts are in dispute has been made more difficult because the parties have not complied

**DECISION AND ORDER**

CURRAN, District Judge.

Superview Network, Inc., a Wisconsin corporation, is suing SuperAmerica, a division of Ashland Oil, Inc., a foreign corporation with its principal place of business in Ashland, Kentucky, for breaching an oral contract and for violating the Wisconsin Fair Dealership Law (WFDL), Wis.Stat. §§ 135.01–.07. This court has diversity jurisdiction over the subject matter of this lawsuit in that the parties are citizens of different states and the amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1332. The Defendant has answered and denied liability and, after the time scheduled for discovery ended, has moved for summary judgment on the grounds that there are no material facts in dispute and that SuperAmerica is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c).

### I. FACTS[1]

Superview Network, Inc. (SNI) is a corporation in the business of selling advertising and producing advertising videos which are shown on monitors located within business establishments. Peter O'Connell, the sole stockholder of SNI, developed a plan for installing this type of advertising in some of Defendant SuperAmerica's gasoline station-convenience store outlets located in Wisconsin. In 1989, O'Connell presented his idea to William McMinn, SuperAmerica's regional vice president. O'Connell proposed that SuperAmerica provide the capital for video equipment and other start-up expenses for fifteen months while SNI, in turn, would solicit advertising from third parties and produce the advertising videos which would be broadcast on monitors in SuperAmerica stores. Any profits realized were to be allocated between SuperAmerica and SNI according to a formula agreed upon by the parties.

O'Connell and McMinn decided to let their attorneys work out the remaining terms of the agreement and to memorialize the contract in writing. Although draft proposals

with Local Rule 6, § 6.05 by setting forth undisputed facts in a stipulation or in numbered paragraphs limited to single factual propositions.

were exchanged, the parties never agreed upon additional terms and the contract was never committed to writing.

After the fifteen month start-up period had passed, SuperAmerica, which claims to have spent $100,000 on start-up costs, decided that the in-store advertising venture was not generating profits, so it did not continue the service. O'Connell himself admits that no third party made any monetary payment for video and spots during the fifteen month period. *See* Affidavit of Andrew O. Riteris at Exhibit A, p. 41 (Deposition of Peter P. O'Connell). Rather, he says that advertisers recompensed SuperAmerica with goods and services in lieu of cash. O'Connell claims that, whether or not the advertising increased revenues during the fifteen-month trial period, SuperAmerica had committed itself to the venture for three years and that it breached the contract and the WFDL by terminating the relationship.

On April 23, 1992, SNI commenced this lawsuit seeking injunctive relief, actual damages, and attorney fees. The Defendant, which maintains that it made no commitment to SNI beyond the fifteen-month trial period and granted no dealership, has filed a motion for summary judgment which is now fully briefed and ready for resolution.

## II. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

■ Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir.1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on its pleadings. If the nonmovant bears the burden of production on an issue at trial, it must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation,* 860 F.2d 1407, 1411 (7th Cir.1988).

■ A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

■ A summary judgment procedure is not meant to be a trial on affidavits. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First National Bank of Arizona v. Cities Service Company,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This inquiry implicates the evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case such as this, the record must show that a jury could find by a preponderance of the evidence that the Plaintiff, the party upon whom the burden of proof is imposed, is entitled to a verdict in its favor. *See Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. If the Plaintiff's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

■ In a case based upon diversity jurisdiction, a federal court will apply the substantive law of the forum if the parties do not argue that the law of any other state should apply. *See International Administrators,*

*Inc. v. Life Insurance Company of North America,* 753 F.2d 1373, 1376 n. 6 (7th Cir. 1985). Therefore, the court will apply the substantive law of Wisconsin to the facts of this case.

## III.  *DISCUSSION AND DECISION*

### A.  *Oral Contract*

#### 1.  *Terms*

In moving for summary judgment, Super-America concedes that it had a valid agreement with SNI covering the fifteen-month trial run of the video venture. *See* Affidavit of Andrew O. Riteris at Exhibit C, p. 25 (Deposition of William F. McMinn). SNI, for its part, does not claim that SuperAmerica breached any contractual provision during the trial period. Rather, the Plaintiff insists that the parties agreed that their contract would last for three years and that Super-America breached this mutual promise by pulling out after the first fifteen months. *See Id.* at Exhibit A, p. 69 (Deposition of Peter P. O'Connell). In asking for judgment as a matter of law, SuperAmerica argues that the parties had no valid three-year contract because they never reached a meeting of the minds on essential terms which would govern their relationship after the start-up phase.

Although the parties both expected that their agreement would be committed to writing, it is undisputed that their attorneys were never able to draft a document acceptable to their clients. Therefore, the court must determine whether there was a binding oral contract committing the parties to participate in the video advertising venture for three years.

■ In deciding whether an oral contract exists, the court must determine whether there was a meeting of the minds between the parties with respect to the essential terms of the agreement and whether the parties intended to be bound to the oral agreement. *See Witt v. Realist, Inc.,* 18 Wis.2d 282, 297, 118 N.W.2d 85, 93 (1962).

In order for an oral contract to be binding and enforceable, the contract terms must be definite and certain. *See Id.* at 297, 118 N.W.2d at 93.

■ Looking at the evidence in the record in a light most favorable to SNI, the court concludes that, even if the parties had agreed to a three-year duration for their venture,[2] there was no meeting of the minds between SNI and SuperAmerica on a number of other essential terms. At his deposition, when asked what terms he and McMinn had agreed upon prior to launching the video advertising, O'Connell could only testify that they had agreed to a 35%–65% allocation of any profits.[3] *See* Affidavit of Andrew O. Riteris at Exhibit A, p. 45–46 (Deposition of Peter P. O'Connell). Even though it is undisputed that SuperAmerica had agreed to provide 100% of the expense money only for fifteen months, O'Connell remembered no provision for paying his salary or his expenses after the trial period in the event that the venture was not making any money. *See Id.* at p. 40. In addition, no agreement was reached concerning use of the "SuperAmerica" trade name. In short, with the possible exception of a formula governing the never-realized profits, the parties never agreed to any terms governing the post-start-up period.

O'Connell explains that he expected that the attorneys would work out the remaining terms of the contract and that the contract would be memorialized in writing. *See Id.* at 56. The draft proposals which were circulated between the parties demonstrate by emendations and marginal notes that the parties had many disagreements about the substance and wording of the proposed terms. *See Id.* at Exhibits B & D. This further undercuts the Plaintiff's contention that a binding three-year contract was formed because it is well-established that an acceptance requesting modification or containing terms that may vary from those offered constitutes a rejection of the original offer and becomes a counterproposal that

---

**2.** SuperAmerica's McMinn denies that there was any discussion that the contract would last for three years. *See Id.* at Exhibit C, p. 45 (Deposition of William F. McMinn).

**3.** McMinn agrees that these percentages are close to the figures he remembers. *See* Affidavit of Andrew O. Riteris at Exhibit C, p. 85 (Deposition of William F. McMinn).

must be accepted by the original offeror before a valid contract is formed. *Leuchtenberg v. Hoeschler*, 271 Wis. 151, 153–54, 72 N.W.2d 758, 760 (1955). Based upon the undisputed facts in this record, the court must conclude that the parties never reached a meeting of the minds on essential terms and that, therefore, they did not enter into a three-year oral contract. *See Ziolkowski v. Caterpillar, Inc.*, 800 F.Supp. 767, 779–81 (E.D.Wis.1992), *aff'd*, 996 F.2d 1220 (7th Cir. 1993).

### 2. *Statute of Frauds*

Even if the parties had agreed to engage in their venture for three years, the Defendant points out that such an oral agreement would have been rendered void by the Wisconsin Statute of Frauds, which provides, in relevant part, that:

> In the following case every agreement shall be void unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith:

> Every agreement that by its terms is not to be performed within one year from the making thereof.

Wis.Stat. § 241.02(1)(a).

▮▮▮▮ When the statute of frauds has been raised as an affirmative defense, the burden is on the party seeking to enforce the contract to show facts which take the case out of the statute of frauds. *See Spensley Foods, Inc. v. Livingston Food & Lumber, Inc.*, 128 Wis.2d 279, 286, 381 N.W.2d 601, 604 (Ct.App.1985), *review denied*, 128 Wis.2d 565, 386 N.W.2d 500 (1986). The "facts alleged to remove the bar of the statute of frauds must be clearly and satisfactorily proved." *In re Estate of Lade*, 82 Wis.2d 80, 86, 260 N.W.2d 665, 668 (1978). In this case

it is the Plaintiff itself which insists that the agreement could not be fully performed by either party in less than three years,[4] so there is no point in considering whether the agreement could be taken out of the statute by the mere possibility that it could be performed within a year. *Cf. Nelsen v. Farmers Mutual Automobile Insurance Company*, 4 Wis.2d 36, 90 N.W.2d 123 (1958). Instead, the Plaintiff argues that the court should find an "implied contract"[5] and that part performance should take the agreement out of the statute.

▮▮▮▮ Under Wisconsin law, part performance is not a substitute for proof of the alleged contract, so even if the court were to order specific performance, the court has already concluded that there are no essential terms to enforce. *See Toulon v. Nagle*, 67 Wis.2d 233, 248, 226 N.W.2d 480, 488 (1975). Nevertheless, the Plaintiff suggests that the contract should be enforced in equity because O'Connell expended time and effort starting the business. A contract otherwise void under the statute of frauds can be enforced if the change in the Plaintiff's position would result in fraud, injustice or undue hardship. *See Dairyland Financial Corporation v. Federal Intermediate Credit Bank of St. Paul*, 852 F.2d 242, 247 (7th Cir.1988); *United States Oil, Inc. v. Midwest Auto Care Services, Inc.*, 150 Wis.2d 80, 90, 440 N.W.2d 825, 828–29 (Ct.App.1989). In this case, however, the Plaintiff has been unable to convince the Court that equity requires specific enforcement. SNI has offered no evidence that either party performed any of the mutual promises after the fifteen-month trial period or that it did not receive everything it had coming during those fifteen months. The Plaintiff has made no showing that, following the expiration of the trial period, it changed its position in any way, acted to its

---

**4.** *See Beacon Federal Savings & Loan Association v. Panoramic Enterprises, Inc.*, 8 Wis.2d 550, 555, 99 N.W.2d 696, 699 (1959) ("in order for a bilateral contract to violate the one year provision of the statute of frauds, performance by both parties must extend beyond one year, and not merely performance by one party").

**5.** Claiming to have an "implied contract" adds nothing to SNI's claim of having an oral contract because Wisconsin law requires that even an

implied contract must "arise under circumstances showing a mutual intent to contract and a meeting of the minds of the parties to the contract on the material terms." *Farnsworth, McKoane & Company v. North Shore Savings and Loan Association*, 504 F.Supp. 673, 675 (E.D.Wis.1981). Because the parties did not arrive at a meeting of the minds on essential terms, they did not have a three-year implied contract.

detriment, suffered any loss or injury, was placed in a situation from which it could not retreat without prejudice, or was defrauded by relying on the oral agreement. The most that has happened is that O'Connell's expectations have been disappointed. *See In re Rogers Estate*, 30 Wis.2d 284, 288, 140 N.W.2d 273, 275 (1966). Moreover, it is undisputed that, after terminating SNI's services, SuperAmerica did not continue the venture on its own in order to benefit from SNI's spade work. As a result, SuperAmerica is not equitably estopped from disavowing the three-year "agreement." Therefore, the court concludes that the statute of frauds rendered the parties' oral agreement void after one year and that it then became terminable at will.

Because the parties never agreed on essential terms which would govern their venture after the initial fifteen month period and because the agreement was never committed to writing and was therefore void under the statute of frauds, the court will grant summary judgment in favor of SuperAmerica on SNI's breach of contract claim.

### B. Dealership

■ As a second theory of recovery, the Plaintiff claims that SuperAmerica violated the Wisconsin Fair Dealership Law (WFDL) by improperly terminating the dealership it had granted.[6] *See* Wis.Stat. §§ 135.01–.07. "The WFDL is intended to protect small businesses (dealers) that deal in the goods or services of a larger company (grantor) and which, because of the link between their economic health and their ability to deal in the grantor's goods or services, are in an inferior bargaining position and could be unfairly exploited by the grantor." *John Maye Company, Inc. v. Nordson Corporation*, 959 F.2d 1402, 1405 (7th Cir.1992). Under the WFDL, a "dealership" is:

> a contract or agreement ... between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name or trademark, service mark, logotype, advertising or other commercial symbol, in which

there is a community of interest in the business of offering, selling, or distributing goods or services at wholesale, by retail, by lease agreement or otherwise.

Wis.Stat. § 135.02(3).

■ SNI contends that it was a dealer within the meaning of the WFDL because, with the Defendant's acquiescence, it used the SuperAmerica trade name on a few give-away premiums and in connection with its solicitation of in-store advertising spots from third parties and because it produced videos advertising SuperAmerica itself. The record does not establish that the parties reached any specific agreement about SNI's use of the SuperAmerica trade name; but, for purposes of resolving this motion, the court will assume that SNI's use of "SuperAmerica" was authorized. Even so, SNI does not fit the definition of a dealer under the facts of this case.

Although the Defendant calls the Plaintiff's claim to be a dealer "frivolous," a literal reading of section 135.02(3) of the Wisconsin Statutes seems to support the Plaintiff's position. SNI was arguably granted the right to "use a trade name or trademark, service mark, logotype, advertising or other commercial symbol" of SuperAmerica. Therefore, the Plaintiff concludes that it was SuperAmerica's dealer. However, when the Seventh Circuit confronted a similar argument, in *John Maye Company, Inc. v. Nordson Corporation*, 959 F.2d 1402 (7th Cir.1992), the court explained that, even though the Plaintiff had satisfied the literal language of the statute, "[j]udicial interpretation of the WFDL ... has made it clear that more is required than the mere right to use a commercial symbol, or even *de minimis* use." *Id.* at 1410.

The Wisconsin Supreme Court has interpreted the statute to contemplate a use of a trademark in conjunction with the dealer's "implicit guarantee of a certain quality of product or service ..." *Foerster Inc. v. Atlas Metal Parts Company*, 105 Wis.2d 17, 29–30, 313 N.W.2d 60, 66 (1981). *See also Wilburn v. Jack Cartwright, Inc.*, 719 F.2d

6. A dealer-grantor relationship must be founded upon a valid implied or express contract, *see Moodie v. School Book Fairs, Inc.*, 889 F.2d 739,

741 (7th Cir.1989), so the court will assume, for purposes of this discussion, that the parties' contract was valid.

262, 265 (7th Cir.1983). Thus, courts have not found a claimant to be a dealer when a putative grantor's trade name was merely used on the "dealer's" pamphlets and brochures, *see John Maye Company,* 959 F.2d at 1410, or on business calling cards. *See Kornacki v. Norton Performance Plastics,* 956 F.2d 129, 134 (7th Cir.1992). SNI's use of the SuperAmerica trade name on windshield scrapers, calendars and other promotional items was similarly *de minimus* and is not sufficient to confer dealer status upon the Plaintiff.

The Plaintiff also claims that it is a dealer because it used SuperAmerica's commercial symbols at a trade show display and in its efforts to solicit video advertising. This court does not believe, however, that this is the type of use contemplated by the drafters of the WFDL. In *Foerster v. Atlas Metal Parts Company,* 105 Wis.2d 17, 313 N.W.2d 60 (1981) Judge Coffey, writing for the Wisconsin Supreme Court, urged a "common sense approach" to construing the meaning of the term "dealership." [7]  *Id.* at 31, 313 N.W.2d at 66. He quoted a press release issued at the time the dealership law was introduced into the Wisconsin Legislature, which proclaimed that:

> "This bill is intended to protect the thousands of small businessmen in Wisconsin who are franchisees. These businessmen operate filling stations, building materials and supply houses, lumber yards, sports equipment stores, motels, hotels and restaurant chains. They sell farm implements, clothing, furniture, and many other types of goods under a franchise system. The intent in this legislation is to protect these Wisconsin businessmen from pressure from a franchisor which is not in their best interest." Press Release, Office of Governor, April 6, 1973.

*Id.* at 24, 313 N.W.2d at 63.

Based on this statement, the Wisconsin court explained that:

The description of the businesses which the Fair Dealership Law was intended to cover indicates that the law was meant to protect only those small businessmen who make a substantial financial investment in inventory, physical facilities or "good will" as part of their association with the grantor of the dealership and is, thus, consistent with common or accepted perceptions of the words franchise or dealership. It is these types of businesses whose economic livelihood would be imperiled by the termination of their dealership without good cause and adequate notice.

*Id.*

SNI's in-store video advertising business is neither one of the types of businesses explicitly enumerated in the press release, nor is it of a type envisioned by the Wisconsin Supreme Court. SNI made no cash outlay for the venture or invested in the commercial symbols;[8] and SNI was not in the business of offering, selling or distributing goods or services bearing the SuperAmerica name. Instead, SNI performed in the capacity of an independent contractor in the business of selling to third parties the means and opportunity to place advertising videos in SuperAmerica stores. This was a service collateral to SuperAmerica's principal business which is the retail sale of gasoline and convenience store items. As indicated by the Wisconsin courts, merely providing advertising and promotional services for a business does not confer dealer status upon a party within the meaning of the WFDL, even though the party uses another business' commercial symbols. Accordingly, the court concludes as a matter of law, that SuperAmerica did not grant a dealership to SNI and that SNI cannot obtain relief under the WFDL.

## ORDER

For these reasons, the court ORDERS that SuperAmerica's "Motion for Summary

---

**7.** In addition, state and federal courts sitting in Wisconsin have ruled that: "[T]he definition of a dealership is not to be construed expansively." *Moore v. Tandy Corporation, Radio Shack Division,* 631 F.Supp. 1037, 1045 (E.D. Wis.1986), *aff'd,* 819 F.2d 820 (7th Cir.1987); *Kania v. Airborne Freight Corporation,* 99 Wis.2d 746, 775–6, 300 N.W.2d 63, 76 (1981).

**8.** *See Moodie v. School Book Fairs, Inc.,* 889 F.2d 739, 743 (7th Cir.1989) (an alleged dealer which has not made *substantial* investment in a trademark will not be protected by the WFDL on basis of use of trademark alone).

Judgment" (filed March 31, 1993) IS GRANTED.

IT IS FURTHER ORDERED that this action is dismissed upon its merits.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that Plaintiff Superview Network, Inc. take nothing and that this action brought against Defendant SuperAmerica, a Division of Ashland Oil, Inc., is dismissed upon its merits.

Done and Ordered.